[Cite as *Lucas v. Lucas*, 2011-Ohio-6411.]

STATE OF OHIO, NOBLE COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STACEY LUCAS, | ) | |
| | ) | CASE NO.    11 NO 382 |
| PLAINTIFF-APPELLEE, | ) | |
| | ) | |
| - VS - | ) | O P I N I O N |
| | ) | |
| JEFFREY LUCAS, | ) | |
| | ) | |
| DEFENDANT-APPELLANT. | ) | |


CHARACTER OF PROCEEDINGS:        Civil Appeal from Common Pleas Court,
                                 Case No. 210-0142.


JUDGMENT:                        Reversed and Remanded.


APPEARANCES:
For Plaintiff-Appellee:          Attorney Michael Buell
                                 322 Third Street
                                 Marietta, Ohio  45750


For Defendant-Appellant:         Attorney Miles Fries
                                 320 Main Street,
                                 P.O. Box 190
                                 Zanesville, Ohio  43702-0190


JUDGES:
Hon. Joseph J. Vukovich
Hon. Gene Donofrio
Hon. Cheryl L. Waite


                                 Dated:  December 6, 2011

VUKOVICH, J.

{¶ 1} Defendant-appellant Jeffrey Lucas appeals the division of assets and assignment of debt ordered by the Noble County Common Pleas Court in its judgment granting a divorce to appellee. First, the husband contests the court's valuation of the marital portion of the residence he shared with plaintiff-appellee Stacey Lucas. We agree that the trial court overvalued the wife's separate portion of the marital residence.

{¶ 2} Next, the husband argues that the court abused its discretion in awarding the wife the entire value of a neighboring rental unit that she purchased with her separate property. As the husband performed labor on this unit over the years and replaced the roof and the front porch months before the marriage end date, we conclude that it was unreasonable to attribute none of the appreciation to active marital labor.

{¶ 3} Finally, the husband contends that the court improperly labeled all of the credit card debt as his separate debt and made him liable for his own medical bills incurred during the marriage. We conclude that it was not unreasonable to have the husband pay his own medical bills incurred just prior to the end of the marriage. Although the trial court could rationally conclude that some of the credit card debt should be attributed to the husband alone, we conclude that the wife failed to meet her burden of establishing that all of the credit card debt incurred prior to the end of the marriage date in the husband's name was non-marital debt. As such, the judgment of the trial court is reversed, and the case is remanded for reconsideration of these issues.

STATEMENT OF THE CASE

{¶ 4} The parties were married in September of 1980. Their children are emancipated. In 1991, the wife inherited from her grandmother $120,000 and 20% of a house. The parties used $50,000 from the sale of a prior marital residence to purchase the other 80% of the house. They then renovated the house for use as their residence and as a bed and breakfast. The husband, who is a carpenter, performed much of the labor on the renovations. In the first couple years, the husband worked on

the home full-time, instead of working outside jobs. The wife states that she thereafter worked many hours on the home. (Tr. 25). The wife testified she spent $78,367.12 from her inheritance to renovate the residence. The remainder of the inheritance was used to supplement their income and is now gone.

{¶ 5} In 1997, the wife inherited $40,000 from a step-grandmother. She used the entire inheritance to purchase a neighboring property, which they used as a rental property. (Tr. 27-28). Over the years, $9,406.82 was spent on materials for the husband to renovate this property: $3,282 came from the wife's separate property inheritance from her great-aunt in 2009 and the rest of the renovations were financed by rental income that property generated. (Tr. 30). In 2009, weeks of the husband's full-time labor was used to replace the roof and porch at the rental property.

{¶ 6} On December 15, 2009, the husband communicated information to the wife that resulted in the end of the marriage. Thereafter, the husband moved above the garage. The wife filed for divorce in April of 2010, and the divorce trial proceeded in November of 2010.

{¶ 7} On March 1, 2011, the trial court entered the divorce decree, finding the residence was worth $150,000 and that $88,767.12 of this was the wife's separate property. As to the neighboring rental property, the court found that the entire $55,000 value of the realty was the wife's separate property. The court attributed all credit card debt to the husband and made him responsible for his own medical bills. The husband filed timely notice of appeal.

ASSIGNMENT OF ERROR NUMBER ONE

{¶ 8} Appellant's first assignment of error provides:

{¶ 9} "THE TRIAL COURT ERRED IN CONCLUDING THAT ANY APPRECIATION IN VALUE OF THE PARTIES' REAL ESTATE WAS APPELLEE'S SEPARATE PROPERTY."

{¶ 10} The husband contests the court's decision on what portion of the realty is marital and what portion is the wife's separate property. The burden of proving that an asset acquired during the marriage is separate property is on the one claiming it is so. *Miller v. Miller*, 7th Dist. No. 08JE26, 2009-Ohio-3330, ¶20. In reviewing the court's decision, we determine whether any discretionary decisions were unreasonable,

arbitrary, or unconscionable and whether any factual decisions were supported by competent, credible evidence. Id. See, also, *Cherry v. Cherry* (1981), 66 Ohio St.2d 348, 355 (the standard of review for decisions involving the division of marital property is that the trial court's decision will not be reversed absent an abuse of discretion); *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219 (an abuse of discretion implies a decision that is unreasonable, arbitrary, or unconscionable).

{¶ 11} Marital property includes income or appreciation on separate property due to the labor, monetary, or in-kind contribution of a spouse during the marriage. R.C. 3105.1717(A)(3)(a)(iii). An inheritance is separate property as is the passive appreciation of the property during the marriage. R.C. 3105.171(A)(6)(a)(i), (iii). Commingling does not destroy the identity of separate property unless the separate property is not traceable. R.C. 3105.171(A)(6)(b).

{¶ 12} The parties' residence, which was also used as a bed and breakfast, was valued by the court at $150,000. The wife inherited a 20% interest in this residence in 1991. The court valued this separate interest at $10,400.[1] The court then found that $78,367.12 spent on materials and labor for improvements to the residence between 1992 and 2009 were paid for out of the wife's inheritance. The court thus concluded that $88,767.12 was the wife's separate property and $61,232.88 was the marital portion of the residence.

{¶ 13} Notably, $50,000 of the original purchase price was paid for with marital funds from the sale of the first marital residence. Thus, the husband's argument centers around the fact that only $11,000 was attributed to appreciation of the marital portion and to marital labor while the wife was credited for every dollar she spent in materials, urging that every dollar spent on material does not automatically and proportionally increase the property value.

{¶ 14} Contrary to one argument set forth by the husband, the wife testified that no money from the marital greenhouse business was used to renovate the residence. (Tr. 62). Moreover, merely because she noted that they used some of the inheritance

---

[1]This was because the estate's probate filings had the house valued at $52,000, and 20% of $52,000 is $10,400. However, the parties paid the estate $50,000 from marital property for the remaining 80% of the property, which establishes that the wife's inherited 20% of the property was actually worth $12,500. Probate filings do not establish value when there exists an actual purchase price paid by the very parties at issue.

money for living expenses does not mean that her other testimony that it was used to renovate the house is incorrect. (Tr. 23). It is not disputed that the renovations on the house cost $78,000 over the years, and the total cash from her inheritance was $120,000. Thus, there was money left from that inheritance after the gradual renovations; in fact, they both testified as to selling portions of it at a gain during stock market peaks. The court's factual determination that the wife's separate money was used to fund over $78,000 in materials (and some outside labor) for renovations is not contrary to the manifest weight of the evidence. See *Miller*, 7th Dist. No. 08JE26 at ¶20. As the wife notes, her claims were a matter of credibility for the trial court as the fact-finder. *Knox v. Knox*, 7th Dist. No. 04JE24, 2006-Ohio-1154, ¶42.

{¶ 15} Although the husband provided more labor than the wife, she did provide many hours of labor over the years. Her outside work and her inheritance allowed the husband to work on the house rather than work outside the house. Thus, the trial court believed that his marital labor on the house was largely offset by her marital labor and other contributions to the household, which financed their life as he worked on the house.

{¶ 16} However, active appreciation on a separate asset from labor during marriage is considered a marital asset regardless of which spouse rendered the labor. R.C. 3105.171(A)(3)(a)(iii) ("appreciation of separate property, due to the labor, monetary, or in-kind contribution of either or both spouses that occurred during the marriage."). See, also, *Middendorf v. Middendorf* (1998), 82 Ohio St.3d 397, 400 (when *either spouse* makes a labor contribution to increase the value of separate property, the increase is deemed marital). Thus, *both* parties' marital labor, which increased the house's value, constitutes a marital portion of the residence.

{¶ 17} Moreover, it is a matter of common knowledge that an expenditure on a fixture in a house does not actually increase the house's value by the amount of the fixture. For instance, the wife spent $8,500 in 2002 on a wood burning furnace. She provided no proof that the house in 2009 was worth $8,500 more because of that purchase. Thus, a dollar for dollar credit on renovations is inappropriate. This is especially true where the wife testified that she was concerned that they over-renovated in excess of the house's value.

{¶ 18} Thus, we remand for reconsideration of the issue regarding the marital portion of the residence. It must be remembered that the wife inherited 20% of the property, but they both purchased the remaining 80% for $50,000 as a marital asset from money earned on the sale of their first marital residence.[2] It should also be considered that any passive appreciation on the marital portion (from increased property values during the more than seventeen years that they owned the property) is marital property. And, the increased value on the entire property from the labor of both the husband and the wife is a marital asset.

{¶ 19} Attributing only $11,000 to active appreciation due to marital labor on the entire property (and to passive appreciation on the marital portion) is unreasonable considering the amount of renovations performed over the years. The husband submitted Exhibit 17, which lists all the extensive remodeling he did on the property. The trial court's decision that only $61,232.88 out of $150,000 was marital meant that the husband received only his original $25,000 investment back (half of their $50,000 marital investment) plus a mere $5,600 for their more than seventeen years of living in (passive appreciation) and working on (active appreciation) the residence. Notably, he spent the first two years working full-time on the home and then intermittently took more time off his outside work to renovate the marital home. (Tr. 25, 52-53, 62). Although the wife is entitled to some credit for use of her separate property to buy materials for these renovations, a dollar for dollar credit is inequitable.

{¶ 20} Before moving on, we dispose of certain responses set forth by the wife. That is, the husband did not waive the argument that he helped increase the value of the residence. Both parties admitted below that he had a hand in most renovations and that he performed more labor than she did. The wife fails to realize that the house itself was not her original separate property. As aforementioned, 20% of it was separate and 80% of it was marital when they first purchased it.

{¶ 21} Contrary to her other contention, the husband did not invite an error by testifying that he often charges a customer an amount for labor that is equal to the amount of materials. The wife states that this formula does not work here because

---

[2]Her proposed findings and conclusions noted that the first marital residence was constructed due to a $30,000 gift from her grandmother. However, testimony showed that the land was a gift from the husband's family. In any event, the wife stated that her grandmother gifted both of them the money.

there is not enough equity to use it since she spent $78,000 in materials. However, the husband did not ask the court to apply this formula. It was the wife's attorney who asked him questions about how much he charges on outside jobs. Moreover, the marital portion of an asset's appreciation is not valued by what the labor is worth but rather by how much it contributed to the appreciation.

{¶ 22} Next, we move to discuss the trial court's decision to award the wife the entire value of the neighboring rental property. This property was purchased with $40,000 that the wife received as a separate property inheritance in 1997. We note that it has been stated that once evidence is presented of the property's separate character, the burden shifts to the other party to show that marital labor caused appreciation on the separate property. See, e.g., *Harrington v. Harrington*, 4th Dist. No. 08CA6, 2008-Ohio-6888, ¶13. However, this court has held that the burden remains on the spouse seeking to declare the appreciation on separate property as separate. *Teaberry v. Teaberry*, 7th Dist.. No. 07MA168, 2008-Ohio-3334, ¶17-18; *Spier v. Spier*, 7th Dist. No. 05 MA 26, 2006-Ohio-1289, ¶50. See, also, *Harrington*, 4th Dist. No. 08CA6 (J. Kline, dissenting) (listing cases and noting that the burden remains on the one claiming separate property because there is a presumption that property acquired during marriage is marital); R.C. 3105.17(A)(3)(a)(iii) (marital labor on separate property is merely a definition of marital property). Either way, some part of the increase here should be attributed to the husband under the facts of this case.

{¶ 23} The wife stated that materials for renovations to this property cost $9,406.82. The labor was mostly performed by the husband. Rental income from the property financed over $6,000 in materials. In 2009, the husband replaced the roof and reconstructed the front porch which was rotting away. Specifically, he removed the front porch floor, replaced it, repaired certain architectural features of the porch, removed, repaired, and replaced the columns, painted the finished product. He testified that he spent five to six weeks on this project instead of working outside jobs. He also painted the back porch at that time. (Tr. 98). The money for these materials, $3,282.04, came from a third inheritance that the wife received.

{¶ 24} The property is now worth $55,000. The husband testified that the $15,000 was a marital asset due to all of the physical labor he performed on the

property, and he opined that it should therefore be divided equally. (Tr. 97-98, 103). In addition to the 2009 roof and porch project, he provided a list of the work he performed on the rental unit. He installed a new furnace and ducts, new electrical service panel and service line, five windows, two toilets, a ceiling fan, two ceiling fixtures, a hand rail, a basement door, two storm doors, and service lines for the washer and dryer. He repaired the plumbing, ceilings, and gutters. He repointed the foundation blocks. He also painted and laid carpet. (Tr. 30-31). He built a new bath vanity and repaired, stripped, and refinished woodwork.

{¶ 25} By awarding the wife the entire $55,000, the court found that not one cent of this $15,000 increase in value was attributable to marital labor. The court provided the wife with not only a dollar-for-dollar credit, which we disapproved of above, but also provided her with the entire remaining increase in value. It was undisputed that marital labor was used to renovate this property and install materials. Most notably is the husband's weeks of full-time work, just months before the marriage end date, which he spent installing a new roof and constructing a new front porch for the rental unit. (Tr. 30). It is clear that these renovations actively increased the value of the current property.

{¶ 26} The wife provided no evidence that the increased value was not due in part to the husband's labor or her own marital labor. In any event, the husband sufficiently met any reciprocal burden. He was a contractor by trade, and he claimed that his labor accounted for the $15,000 increase in value. Even if the trial court believes that the husband failed to show that he is entitled to half of the entire $15,000 increase (since the wife used separate property to fund the renovations), he did establish that he is entitled to some part of the increased value of the rental unit.

{¶ 27} The wife acknowledged that marital labor was used to renovate this property. Besides generally asking for the entire value of the property, she did not dispute that the husband's marital labor had an effect on the value, and her separate contributions to materials do not cover the entire appreciation. As aforementioned, she received more than a dollar-for-dollar credit for materials here. It is unreasonable to find that her $9,000 in material and/or passive appreciation accounted for the entire $15,000 increase in value without considering the amount of labor performed on the

property by the husband, most notably the recent renovations to the roof and porch. Thus, we remand for reconsideration of the marital portion of the rental unit.

ASSIGNMENT OF ERROR NUMBER TWO

{¶ 28} The husband's second assignment of error provides:

{¶ 29} "APPELLEE FAILED TO SUSTAIN HER BURDEN OF PROVING THAT CERTAIN DEBTS WERE APPELLANT'S SEPARATE DEBTS."

{¶ 30} At the time of the divorce hearing, the wife had no credit card debt in her name, and the husband had $20,000 in his name. The court attributed all of this debt to the husband. In his proposed findings of fact and conclusions of law, the husband asked that $9,288.84 in credit card debt be considered marital debt as it existed prior to December 15, 2009, the date chosen as the marriage end date.

{¶ 31} Adopting the wife's proposed findings and conclusions, the court held that the husband did not present credible evidence that the debt incurred prior to December 15, 2009 represented marital obligations. The court found that the evidence showed that the husband has been rapidly increasing his debt since mid-2009 as if in preparation for a divorce. The court noted that the husband admitted that some charges related to materials for outside construction jobs. The court found that the husband admitted that some charges were for internet dating sites, personal trips, and other non-marital expenses. The court concluded that it could not determine which portions of the cards were marital and thus it would consider the entire balance non-marital.

{¶ 32} On appeal, the husband reiterates that the court should have found $4,014.84 on a Chase card and $5,274 owed on a Discover card to be marital debt. He urges that the wife had the burden to show the debt incurred during the marriage was not marital debt and that she failed to meet her burden.

{¶ 33} One of the factors to consider in dividing marital property is the assets and liabilities of the spouse. R.C. §3105.171(F)(2). Marital debt has been defined as any debt incurred during the marriage for the joint benefit of the parties or for a valid marital purpose. *Ketchum v. Ketchum*, 7th Dist. No. 2001CO60, 2003-Ohio-2559, ¶47, citing Turner, Equitable Distribution of Property (2 Ed.1994, Supp.2002) 455, Section 6.29. Debts incurred during the marriage are presumed to be marital unless it can be

proved that they are not. *Vergitz v. Vergitz*, 7th Dist. No. 05JE52, 2007-Ohio-1395, ¶12, citing *Knox v. Knox*, 7th Dist. No. 04JE24, 2006-Ohio-1154, ¶ 25-26. *The party seeking to establish a debt is separate rather than marital bears the burden of proving this to the trial court.* Id, citing *Hurte v. Hurte*, 164 Ohio App.3d 446, 2005-Ohio-5967, ¶ 21.

{¶ 34} As the trial court pointed out, the Chase card once had a low balance: $947 on the statement due in April of 2009 and $672 on the statement due in June of 2009. Thereafter, this card saw more use. The bill due in July showed a $2,872 balance; the bills due in August and September showed balances over $4,000. The next statement shows the husband made a payment of $2,500 and $768 in purchases, leaving a balance of $2,473 due in October. The statement due in November was not provided in the packet. However, the next statement showed a prior balance of $5,000, a $1,000 payment, $900 in returns, and $1,000 in purchases, including food, automotive, and gas purchases. The January statement (ending December 11, 2009) showed a $300 payment and $853 in purchases.

{¶ 35} The wife's attorney made much of expensive online clothing purchases; however, the items were returned the next month and credited back to the card. There was an $80 hotel bill incurred on November 28, 2009, which the wife's attorney suggested was his personal expense. The court could agree with this characterization. The husband admitted that he used the Chase card for his business as well as personal purchases. There were a multitude of home improvement store purchases on the card. He stated that the monthly payments included money that customers paid him for the materials he bought for their projects. (Tr. 110). The trial court could conclude that he did not use all the money received from his clients to pay off their materials and the trial court can use its discretion to decide how to allocate payments to purchases.

{¶ 36} Still, the trial court expressly and improperly imposed the burden on the husband. *Vergitz v. Vergitz*, 7th Dist. No. 05JE52, 2007-Ohio-1395, ¶12 (*The party seeking to establish a debt is separate rather than marital bears the burden of proving this to the trial court*). The wife can use the husband's testimony to meet this burden on certain items such as home improvement store purchases. However, various

purchases on this card appear on their face to be marital obligations, such as food, pharmacy, gas and pet store. Besides the presumption that credit cards purchases during the marriage are marital debt, the husband testified that marital purchases were made on his cards. He stated that he put all the family groceries on his credit cards and that he bought many items for the house. (Tr. 109-110, 125). *The wife did not dispute this.*

{¶ 37} In fact, *the wife did not testify on the topic of these credit cards at all.* Thus, she did not sufficiently establish that the entire balance existing as of December 15, 2009 was non-marital. Although she did present some evidence (through the husband's admissions) that certain charges should be labeled separate debt, this does not allow recategorization of all purchases, including food, pharmacy, gas, and pet bills, as not being for a valid marital purpose.

{¶ 38} This is true for the Discover card as well. The husband notes that $5,274 worth of debt on his Discover card represents debt incurred during the marriage. This balance was previously on a First National Bank Visa which was later transferred to a new Discover card to save interest. Thus, we view the transactions on the Visa to determine the propriety of the court's decision to label all this debt as non-marital.

{¶ 39} The wife's attorney took issue with a September payment to Sirius radio, which service the husband testified that he had for years, and a $95 hotel bill from November of 2009, which the husband said was a gift from them to his sisters. The wife's attorney also emphasized charges for certain online personal services. However, this concerns only approximately $150.[3] (Tr. 134-135).

{¶ 40} Even if various items were not marital obligations, this does not establish that none of the charges on the card had a valid marital purpose. As with the other card, the husband testified that he bought all the groceries for the house and that many of his family purchases were represented on the credit card. (Tr. 125-126). *The wife did not dispute this. The party seeking to establish a debt is separate rather than*

---

[3]The wife's attorney also detailed charges for trips to Florida, noting that the husband's paramour lives there. (Tr. 128). The court mentioned this as well. However, these charges were made after the December 15, 2009 marriage end date and thus were not within the court's consideration in any event.

*marital bears the burden of proving this to the trial court.* *Vergitz v. Vergitz*, 7th Dist. No. 05JE52, 2007-Ohio-1395, ¶12.

{¶ 41} Notably, in November of 2008, more than a year before any mention of marital demise, this card had a balance of $2,311. Thus, it did not have a low balance in the year the marriage ended, like the Chase card may have. Thereafter, many purchases represented groceries and restaurants. There were also theater tickets, books, pet store purchases, home improvement store charges, and clothing. In fact, the husband testified *and the wife admitted* that he used the credit cards to purchase some items from the internet for the kitchen renovation. (Tr. 57, 104).

{¶ 42} Although the trial court could rationally find that the wife sufficiently established that some charges lacked a valid marital purpose, she failed to meet her burden with regard to most of the items on the card. In fact, she did not present any testimony to dispute the husband's testimony that she benefitted from many of the purchases made on the cards. As such, the court's decision allocating the credit card wholly to the husband is reversed and remanded.

{¶ 43} Finally, the husband states that the $3,129.36 bill remaining from his hernia surgery should be considered a marital debt. This surgery took place December 1, 2009, just prior to the December 15, 2009 date that the court used as the marriage end date. The total is apparently derived from two bills contained in his exhibit number 10: $2,806.14 from St. Joseph's Hospital, and $323.22 from Anesthesia Associates. The court made him responsible for the entire bill.

{¶ 44} Initially, we note that the husband did not testify that these bills were still outstanding. In fact, at the deposition, he stated that the hospital bill was a mistake and that the only bills outstanding were $323 (paid down to $275) and $600 (also part of exhibit 10 but not sought in his proposed findings and conclusions). His proposed findings and conclusions claimed that he testified that he has $3,129.36 in unpaid medical bills from the hernia surgery. Yet, such testimony cannot be found in the transcript. Where three bills are submitted in an exhibit, only two are later asked to be considered toward the marital debt, and no testimony is presented on any of them to establish that they are actual and outstanding debts, the court does not abuse its discretion in refusing to allocate half the debt to the wife.

{¶ 45} Moreover, it is within the court's discretion to make a party liable for their own medical bills incurred just weeks before disclosing the marriage is ending. See *Middendorf v. Middendorf*, 82 Ohio St.3d 397, 401, 1998-Ohio-403 (a trial court has broad discretion in making divisions of property in domestic cases). It was not unreasonable for the court to find that it would be inequitable to make the wife liable for these bills under the circumstances of the case. See R.C. 3105.171(C)(1) (equality is the starting point). As such, this argument is without merit.

{¶ 46} For the foregoing reasons, the judgment of the trial court is hereby reversed, and the case is remanded for reconsideration of certain issues detailed above.

Donofrio, J., concurs.
Waite, P.J., concurs.