[Cite as *Albright v. Putman-Albright*, 2014-Ohio-622.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

DONALD E. ALBRIGHT          :
                            :      Appellate Case No. 25824
   Plaintiff-Appellee/Cross-Appellant     :
                            :      Trial Court Case No. 2010-DR-668
v.                          :
                            :
TINA MARIE PUTMAN-ALBRIGHT  :      (Civil Appeal from Common Pleas
                            :       Court, Domestic Relations)
   Defendant-Appellant/Cross-Appellee   :
                            :

. . . . . . . . . . .

O P I N I O N

Rendered on the 21st day of February, 2014.

. . . . . . . . . . .

BRIAN A. SOMMERS, Atty. Reg. #0072821, 130 West Second Street, Suite 840, Dayton, Ohio 45402
   Attorney for Plaintiff-Appellee/Cross-Appellant

CHERYL R. WASHINGTON, Atty. Reg. #0038012, 130 West Second Street, Suite 450, Dayton, Ohio 45402
   Attorney for Defendant-Appellant/Cross-Appellee

. . . . . . . . . . . .

FAIN, J.

{¶ 1}    Defendant-appellant Tina Putman-Albright appeals from a Final Judgment and

Decree of Divorce. She contends that the trial court abused its discretion by appointing plaintiff-appellee Donald Albright as the residential and custodial parent of the parties' minor child. She also contends that the trial court abused its discretion by dividing the marital debt equally between the parties. Mr. Albright cross-appeals, contending that the trial court erred in selecting the termination date of the marriage, which affects the division of his pension funds and the award of spousal support.

{¶ 2} We conclude that the trial court did not err in finding that awarding custody to Mr. Albright is in the best interest of the child. We further find no abuse of discretion with regard to the division of the marital debt or Mr. Albright's pension. We conclude that the trial court did not abuse its discretion in awarding spousal support to Ms. Putman-Albright. Finally, we conclude that the trial court acted within its discretion, and within statutory guidelines, in determining the termination date of the marriage. Accordingly, the judgment of the trial court is Affirmed.

## I. The Course of Proceedings

{¶ 3} The parties were married in 2006 and have one minor child as a result of the marriage. On May 5, 2010, Mr. Albright filed a Petition for Domestic Violence Civil Protection Order. The next day, Ms. Putman-Albright also filed a Domestic Violence petition. Mr. Albright brought this action for divorce in June 2010. Ms. Putman-Albright was awarded temporary custody of the parties' child, and Mr. Albright was awarded visitation. During the pendency of the divorce, Mr. Albright claimed that he was being denied visitation with the child. The divorce proceeded to a hearing which occurred on May 31, 2012 and on January 9, 2013.

Following the hearing, the trial court issued a decision awarding custody to Mr. Albright. The trial court further ordered an equal division of certain marital debts. Finally, the trial court determined that the marriage terminated on the first day of the final hearings – May 31, 2012 – and used that date in dividing Mr. Albright's pension benefits and in awarding spousal support to Ms. Putman-Albright.

{¶ 4}    Ms. Putman-Albright appeals, challenging the award of custody and the division of marital debt. Mr. Albright cross-appeals, arguing that the trial court abused its discretion with regard to the termination date of the marriage and in its division of his pension and the award of spousal support.

**II.   The Trial Court Did Not Abuse its Discretion in Finding that an Award of Custody to Mr. Albright Was in the Best Interest of the Child**

{¶ 5}    Ms. Putman-Albright's First Assignment of Error states as follows:

THE COURT'S GRANT OF CUSTODY TO APPELLEE CONSTITUTED AN ABUSE OF DISCRETION AND WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 6}    Ms. Putman-Albright contends that the evidence does not support the trial court's decision to award custody of the minor child to Mr. Albright and that the decision therefore constitutes an abuse of discretion.

{¶ 7}    "The discretion which a trial court enjoys in custody matters should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned." *Miller v. Miller*, 37 Ohio St.3d 71, 74, 523

N.E.2d 846 (1988). Under the abuse-of-discretion standard in a custody case, "disputes about the facts, the weight accorded the testimony, and the credibility of witnesses are left to the trial court." *Gartin v. Gartin*, 2d Dist. Clark No.2011-CA-74, 2012-Ohio-2232, ¶ 7, citing *Davis v. Flickinger*, 77 Ohio St.3d 415, 419, 674 N.E.2d 1159 (1997). "The question is whether evidence was presented that, if believed, supports the trial court's findings." *Id.*, citing *Ross v. Ross*, 64 Ohio St.2d 203, 204, 414 N.E .2d 426 (1980).

{¶ 8}     R.C. 3109.04(F) requires that the court determine the child's best interest in allocating parental rights and responsibilities. The best-interest factors set forth in R.C. 3109.04(F)(1) include:

(a) The wishes of the child's parents regarding the child's care;

(b) The wishes and concerns of the child,

(c) The child's interaction and relationship with the child's parents and siblings;

(d) The child's adjustment to the child's home, school, and community;

* * *

(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;

* * *

{¶ 9}     It is clear from the record that both parents love, and are bonded with, the child. Both parents wish to be the custodial parent. The child's interaction with both parents is appropriate, except that there is evidence that Ms. Putman-Albright makes attempts to denigrate Mr. Albright in the child's presence. The child, who was five at the time of the decision, did not

express any desire to be with one parent or the other. However, the Family Investigation Reporte recommended that Ms. Putman-Albright be awarded custody. Ms. Putman-Albright testified that she had always been the child's primary caregiver. Mr. Albright testified, to the contrary, that prior to the parties' separation, he was the one who cared primarily for the child.

{¶ 10} The trial court was concerned with what it found to be Ms. Putman-Albright's wilful failure to facilitate and to honor Mr. Albright's parenting time. Ms. Putman-Albright testified that she did not prevent Mr. Albright's exercise of his parenting time; she testified that he failed to exercise his rights. Conversely, Mr. Albright testified that he was prevented from seeing the child due to the actions of Ms. Putman-Albright. According to Mr. Albright, he was denied visitations with the child "at least" thirty times due to the fact that Ms. Putman-Albright would not show up for the exchanges of the child or would send a message that she would not show. The exchanges that did take place became confrontational, and the place of exchange was therefore moved to the Englewood Police Department. The record contains police reports noting that Ms. Putman-Albright did not show for some exchanges, or that she appeared hours after an exchange time. There is further evidence that Ms. Putman-Albright prevented visitation for a period of five months, and then only after Mr. Albright moved for contempt. Even after that, Ms. Putman-Albright continued to interfere with Mr. Albright's parenting time.

{¶ 11} The trial court, in its decision, stated that "from the totality of the evidence this Court finds [Mr. Albright's] testimony regarding the parenting difficulties to be more credible than [that of Ms. Putman-Albright]." The trial court further stated:

> [Ms. Putman-Albright] demonstrates that she is under the mistaken belief
>
> that she controls whether or not [the child] can spend time with his father rather

than the court order. In fact, on May 20, 2012, the day before the first day of trial in this matter, [she] failed to facilitate parenting time. Past behavior is a strong indicator of future behavior. The Ohio statutes clearly state that a court must look to which parent is more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights with the other parent and [Ms. Putman-Albright] has failed to demonstrate same.

{¶ 12} At the end of the May hearing, the trial court ordered the parties to begin week-to-week parenting time during the summer, so that the child would be with Mr. Albright every other week for one continuous week, as prescribed by the Standard Order. The record reflects that Ms. Putman-Albright was reluctant to comply with that order.

{¶ 13} Ms. Putman-Albright argues that her testimony is more credible regarding visitation, because she "kept a detailed journal of the circumstances surrounding visitation [while] Mr. Albright provided contradictory and equivocal testimony, backtracking when confronted on cross-examination." She further argues that the trial court should have considered her testimony that Mr. Albright poses a danger to the child's safety. Specifically, she testified that he refuses to treat the child's asthma; that he allowed the child "to become sunburned from head to toe, and blistered, resulting in emergency room treatment[;]" he "has returned the child to his mother with bruises, welts, rashes, scrapes or marks[;]" and that "the child suffered a severe cut on his finger in Mr. Albright's care, which required 7 stitches."

{¶ 14} Appellate courts generally defer to a trial court's decision regarding credibility because the trial judge is "best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered

testimony." *In re J.Y.*, 2d Dist. Miami No. 07-CA-35, 2008-Ohio-3485, ¶ 33, quoting from *Seasons Coal Co., Inc. v. City of Cleveland*, 10 Ohio St.2d 77, 80, 461 N.E.2d 1273 (1980).

{¶ 15} This was a case with conflicting evidence. The trial court was free to believe all, some or none of the testimony of Ms. Putman-Albright and was likewise free to credit the testimony of Mr. Albright. Mr. Albright's testimony was not inherently incredible. We find no evidence in the record to support a claim of any harm to the child other than the cut on the finger, for which Mr. Albright sought appropriate medical care. There is no evidence that Children's Services found any evidence of abuse or neglect, despite the fact that Ms. Putman-Albright filed complaints in both Montgomery and Hamilton County against Mr. Albright.

{¶ 16} Based on the evidence in the record, we conclude that the trial court did not abuse its discretion; there is competent evidence to support the trial court's conclusion that the child's best interest was served by appointing Mr. Albright the custodial parent. Accordingly, Ms. Putman-Albright's First Assignment of Error is overruled.

### III. The Trial Court's Decision to Require the Parties to Share the Marital Debt Equally Was Reasonable

{¶ 17} Ms. Putman-Albright's Second Assignment of Error provides as follows:

THE DECISION TO HAVE EACH PARTY PAY THE MARITAL DEBT EQUALLY IS UNREASONABLE.

{¶ 18} Ms. Putman-Albright contends that the trial court abused its discretion by ordering her to pay one-half of a claimed marital debt of $5,922.13. In support, she argues that her income is much less than Mr. Albright's.

{¶ 19} "Marital debt has been defined as any debt incurred during the marriage for the joint benefit of the parties or for a valid marital purpose." *Lucas v. Lucas*, 7th Dist. Noble No. 11 NO 382, 2011-Ohio-6411, ¶ 33. "Debts incurred during the marriage are presumed to be marital unless it can be proved that they are not." *Id*. We review the trial court's division of debt under an abuse-of-discretion standard. *Banjoko v. Banjoko*, 2d Dist. Montgomery No. 25406, 2013-Ohio-2566, ¶ 18.

{¶ 20} With regard to the division of the claimed debt, the trial court stated:

Total of the above bills is approximately $5,922.13. Most if not all of the bills are in collections, and may even have been charged-off by now. * * * Each party shall be responsible for paying approximately $2,961.07, *if* said creditors continue to request said payments. (Emphasis in original.)

{¶ 21} Most of the bills introduced into evidence by Ms. Putman-Albright are copies of bills dated 2007, 2008 and 2009, with some of the bills showing that they were in collections. One of the exhibits was not a bill, but an explanation of medical insurance benefits, which did not show whether the medical provider had charged Putman-Albright with any remaining amounts owed. The only somewhat currently dated copies included a cable bill and a doctor's bill from 2011. The doctor's bill showed a charged amount of $2491.11, but had a handwritten note showing "245.00." There was no testimony regarding the current amounts owed on the bills, or whether they had been charged off by the creditors.

{¶ 22} Ms. Putman-Albright testified that she would complete her nursing degree in 2013 and would earn $15 per hour upon completion of her degree. The trial court awarded Ms. Putman-Albright the sum of $550 per month as spousal support, for a period of fourteen months.

{¶ 23} We find no abuse of discretion in the trial court's decision to equally divide the

claimed debt. The evidence does not demonstrate that these debts are being pursued by the creditors, and does not demonstrate the amounts currently due, if any, on the bills. Ms. Putman-Albright testified that she would be earning money upon completion of her degree. She was awarded a term of spousal support. Ms. Putman-Albright's Second Assignment of Error is overruled.

## IV. The Trial Court Did Not Abuse its Discretion by Selecting the Date of the First Hearing on the Divorce as the Date of Termination of the Marriage

{¶ 24} Mr. Albright's First, Second and Third Assignments of Error on cross-appeal state:

THE TRIAL COURT'S USE OF THE FIRST HEARING DATE AS THE DATE OF TERMINATION OF THE MARRIAGE WAS AN ABUSE OF DISCRETION.

THE TRIAL COURT'S ORDER FOR SPOUSAL SUPPORT WAS AN ABUSE OF DISCRETION.

THE TRIAL COURT'S DIVISION OF APPELLEE'S 401K WAS AN ABUSE OF DISCRETION.

{¶ 25} Mr. Albright contends that the trial court erred by determining that the marriage was terminated as of May 31, 2012, the date the divorce hearing began. He contends that the de facto date of termination should have been determined to be May 2010, when each party obtained a restraining order against the other, because "after this point, neither party hoped for, or even considered reconciliation, nor did they cohabitate." Thus, he argues that using the 2012 date

"leads to an inequitable gain for [Ms. Putman-Albright], as the term of the marriage was a full two years shorter than the figure used by the court to determine spousal support and retirement divisions." Mr. Albright also argues that he paid Ms. Putman-Albright the sum of $5,000, which he withdrew from his pension account with his employer, as full satisfaction of all claims she might have against him.

{¶ 26} "During the marriage" means the period of time from the date of the marriage through the date of the final hearing in the divorce action, unless the court determines that either or both dates would be inequitable, in which event "during the marriage" means the period between the dates the court selects. R.C. 3105.171(A)(2). "The trial court has broad discretion in choosing the appropriate marriage termination date and this decision should not be disturbed on appeal absent an abuse of discretion." *Walpole v. Walpole*, 8th Dist. Cuyahoga No. 99231, 2013-Ohio-3529, ¶ 102, citing *Berish v. Berish*, 69 Ohio St.2d 318, 321, 432 N.E.2d 183 (1982).

{¶ 27} There is evidence in the record that, if believed, establishes that Ms. Putman-Albright terminated her employment following the birth of the parties' child, in order to stay at home with the child. There is no evidence that she was accumulating any type of savings or pension benefit during this time. After the parties separated, Ms. Putman-Albright returned to school to obtain her nursing degree, with the expectation that she will be employed in the near future.

{¶ 28} With regard to the $5,000 paid to her, Ms. Putman-Albright testified that these funds were paid to her because she had paid that amount during the marriage to prevent the home from going into foreclosure. Mr. Albright submitted in evidence a handwritten note, signed by both parties, that he contends supports a finding that this amount was paid as a settlement of all

property claims against him. A review of this Exhibit 6 shows that the statement refers to the monies as "moving expenses." It appears to relate solely to claims against the marital residence. Mr. Albright testified that he paid the $5,000 so that Ms. Putman-Albright would have funds to move out of the marital residence, which was his separate, premarital property.

{¶ 29} We conclude that the trial court did not abuse its discretion in determining that the marriage terminated on the date of the final hearing – the default date established in the statute for the termination of the marriage. There is nothing in the record to establish that the use of this date results in an inequitable division of Mr. Albright's pension fund, or that it was inequitable to award spousal support during the fourteen months after the parties each sought and obtained domestic violence protection orders, and before the date of the initial hearing. Nor do we find the trial court's decision with regard to the marriage termination date, the division of the retirement pension, or the award of spousal support constitutes an abuse of discretion. Therefore, all of Mr. Albright's assignments of error are overruled.

## V. Conclusion

{¶ 30} All of Ms. Putman-Albright's assignments of error and all of Mr. Albright's assignments of error having been overruled, the judgment of the trial court is Affirmed.

. . . . . . . . . . . . .

HALL and WELBAUM, JJ., concur.

Copies mailed to:

Brian A. Sommers
Cheryl R. Washington
Hon. Denise L. Cross