[Cite as *Leithauser v. Leithauser*, 2024-Ohio-1497.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CLARK COUNTY

| | | |
|---|---|---|
| SHARON A. LEITHAUSER | : | |
| | : | |
| Appellee | : | C.A. No. 2023-CA-43 |
| | : | |
| v. | : | Trial Court Case No. 21-DR-0015 |
| | : | |
| DANIEL E. LEITHAUSER | : | (Appeal from Common Pleas Court-Domestic Relations) |
| | : | |
| Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on April 19, 2024

. . . . . . . . . . .

STACEY ROBERT PAVLATOS, Attorney for Appellant

SHARON A. LEITHAUSER, Pro Se Appellee

. . . . . . . . . . . .

HUFFMAN, J.

{¶ 1} Daniel E. Leithauser appeals from a judgment entry and decree of divorce from Sharon A. Leithauser. Specifically, Daniel challenges the trial court classification of a mortgage on the former marital residence on Tudor Circle in Springfield as a non-marital debt. For the reasons that follow, we conclude that the debt in question was a marital debt and the trial court erred in failing to treat it as such in the division of property.

Accordingly, the judgment of the trial court is reversed as to the property division only and remanded for further proceedings on that issue consistent with this opinion. In all other respects, the judgment of the trial court is affirmed.

**Facts and Procedural History**

{¶ 2} The parties were married in 1988. During the parties' marriage, they had exchanged their family residence on Tudor Circle, which was encumbered by a mortgage, with that of Daniel's parents on Kramer Road, which was mortgage-free. Pursuant to an oral agreement with Daniel's parents, Daniel and Sharon continued to pay the Tudor Circle mortgage. The Tudor Circle property was refinanced twice by Daniel and Sharon, and Daniel's parents ultimately purchased the property after a foreclosure action, leaving Daniel and Sharon mortgage-free, although they continued to service the Tudor Circle mortgage taken out by Daniel's parents.

{¶ 3} Sharon filed a complaint for divorce on January 2021. Daniel filed an answer and counterclaim, and Sharon answered the counterclaim in February 2021.

{¶ 4} A hearing occurred over six days, after which the court asked the parties to brief the issues. On July 17, 2023, Daniel filed a memorandum asserting, in relevant part, that he wished to retain the Kramer Road property, and that the outstanding mortgage indebtedness on the Tudor Circle property, which the parties had swapped with his parents, had a balance of $81,793 as of November 24, 2022. Daniel also asserted that, considering tax liens totaling $9,710, the equity in the Kramer Road property was $69,365.

{¶ 5} On July 28, 2023, Sharon filed a memorandum requesting that the Kramer

Road property be sold, with the net proceeds to be divided between the parties, or that she be paid half of the appraised value. She noted that her appraiser had valued the property at $215,000, and Daniel had not offered an alternative appraisal. Sharon asserted that the debt on the Tudor Circle property was not a marital debt, because the mortgage was in Daniel's mother's name and there was no written agreement signed by the parties under which they could be held liable for the debt. Sharon noted that Daniel's mother had been paying the mortgage since September 2021, and she asserted that any payments by the parties toward the Tudor Circle mortgage had been gifts between family members.

{¶ 6} On August 10, 2023, the trial court issued a Judgment Entry and Decree of Divorce; in the decree, the debt due to Daniel's parents associated with the Tudor Circle mortgage was treated as a non-marital debt. Daniel appeals.

## Assignment of Error and Analysis

{¶ 7} Daniel asserts the following sole assignment of error:

THE TRIAL COURT IMPROPERLY APPLIED THE PAROL EVIDENCE RULE TO PRECLUDE CONSIDERATION OF UNDISPUTED EVIDENCE OF THE AGREEMENT BETWEEN THE APPELLANT AND APPELLEE WITH THE APPELLANT'S PARENTS WHEREIN THE PARTIES AND THE PARENTS EXCHANGED THEIR RESIDENCES SUBJECT TO THE PROMISE BY THE APPELLANT AND APPELLEE TO CONTINUE TO PAY AND ULTIMATELY SATISFY THE MORTGAGE OBLIGATION ENCUMBERING THE RESIDENCE THEY TRANSFERRED

TO THE PARENTS IN EXCHANGE FOR A MORTGAGE-FREE RESIDENCE.

{¶ 8}  Daniel argues that the trial court erred treating the debt on the Tudor Circle property as a non-marital debt.

{¶ 9} In issuing the final decree of divorce, the trial court made the following findings:   The de facto termination date of the parties' marriage was June 30, 2023.   The parties were joint owners of the marital residence at 615 Kramer Road in Springfield. Regarding the Tudor Circle property, the court found that the outstanding debt was $81,793 as of November 24, 2022, that "that there were no promissory notes or other legal contracts in writing" obligating either of the parties to make mortgage payments for Daniel's parents, and that any such obligation was not legally enforceable without a written agreement due to the parol evidence rule.   As such, the court found that the mortgage on the Tudor Circle property was the legal obligation of Daniel's mother[1] and that the parties had no legal obligation to pay the mortgage.   The court found that Daniel had not met his burden of proof to establish that the mortgage on the Tudor Circle property was "a valid marital debt" to be offset against the other marital assets, including the fair market value of the Kramer Road property.

{¶ 10} The court found that the fair market value of the Kramer Road marital residence was $215,000, that the parties needed to make $28,766.11 in repairs in order to sell the house, and that there were tax liens of $9,710 on the property.   Accounting for

---

[1] Both of Daniel's parents had been named on the Tudor Circle mortgage, but his father died while the parties' divorce was pending, so the trial court discussed the mortgage as the responsibility of Daniel's mother in the divorce decree.

these factors, the court found the net equity in Kramer Road property to be $176,523.89 and that half of that number – or $88,261.95 -- was Sharon's share of the marital property. The court also found that Sharon owed Daniel $4,729.50 for his equitable interest in her vehicle, $2,841.39 for his equitable interest in her life insurance policy, and $3,605.34 for his equitable interest in her retirement account. Offsetting these numbers, the court found that Daniel owed Sharon $77,085.72 in order to achieve an equitable division of the parties' marital property. The court gave Daniel the option to purchase the Kramer Road residence by paying Sharon $77,085.72 within 90 days of the order; otherwise, the court ordered that the property be listed for sale by a mutually agreeable realtor at a mutually agreed upon a price. The court granted exclusive occupancy of the Kramer Road property to Daniel and ordered that he be responsible for all utilities and insurance, but that the parties be equally responsible for all real estate taxes.

{¶ 11} Daniel argues on appeal that the parol evidence rule did not apply and that the debt owed on the Tudor Circle property was a marital debt. He acknowledges that there was no written agreement memorializing the agreement between Daniel and Sharon with Daniel's parents that, as part of the consideration for their exchange of residences, Daniel and Sharon would ensure that Daniel's parents "would ultimately have a mortgage-free residence at 4300 Tudor Circle." However, he asserts that his and Sharon's obligation to pay the indebtedness and provide Daniel's elderly parents with a mortgage-free home was never in dispute; only after Sharon filed for divorce did she "disavow any further obligation under that agreement" by demanding that she be awarded half the value of the Kramer Road home without adjusting for the agreement the parties

had made to obtain the Kramer Road home.   Sharon, acting pro se, asserts that the law and facts supported the trial court's decision.

{¶ 12} "In an action for divorce, the trial court must determine what constitutes marital property and what constitutes separate property, divide the marital property equitably between the parties, and "disburse a spouse's separate property to that spouse."   R.C. 3105.171(D). "A trial court's classification of property as marital or separate must be supported by competent, credible evidence."   *Banjoko v. Banjoko*, 2d Dist. Montgomery No. 25406, 2013-Ohio-2566, ¶ 18, citing *Mays v. Mays,* 2d Dist. Miami No. 2000-CA-54, 2001 WL 1219345, *3 (Oct. 12, 2001); *Renz v. Renz*, 12th Dist. Clermont No. CA2010-05-034, 2011-Ohio-1634, ¶ 17.   " * * *[I]n considering whether a trial court's division of marital assets and liabilities is fair and equitable, appellate courts review a trial court's decision under an abuse of discretion standard." *Banjoko* at ¶ 18, citing *Koegel v. Koegel*, 69 Ohio St.2d 355, 357, 432 N.E.2d 206 (1982).   An abuse of discretion " 'implies that the court's attitude is unreasonable, arbitrary or unconscionable.' "   *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983), *quoting State v. Adams,* 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980).   "It is to be expected that most instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary." *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.,* 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990). Decisions are unreasonable if no sound reasoning supports the decision. *Id.*

{¶ 13} "Debts, like assets, are classified as property, and an order assigning either

to one of the parties is a form of property division." *Stackhouse v. Stackhouse,* 2d Dist. Clark No. 16244, 1997 WL 451471, *2 (July 25, 1997). " 'Marital debt has been defined as any debt incurred during the marriage for the joint benefit of the parties or for a valid marital purpose.' " *Paterchak v. Paterchak*, 2d Dist. Montgomery No. 25383, 2013-Ohio-3043, ¶ 19, quoting *Lucas v. Lucas*, 7th Dist. Noble No. 11 NO 382, 2011-Ohio-6411, ¶ 33. "Debts incurred during the marriage are presumed to be marital unless it can be proved that they are not.' " *Id.* "In addition, '[t]he party seeking to establish a debt is separate rather than marital bears the burden of proving this to the trial court.' " *Id.,* quoting *Vergitz v. Vergitz*, 7th DIst. No. 05JE52, 2007-Ohio1395, ¶ 12*.* "As with the division of marital property, this court reviews the trial court's division of marital debt under an abuse of discretion standard." *Hertzfeld v. Hertzfeld*, 2023-Ohio-4411, __ N.E.3d __, ¶ 32 (8th Dist.), citing *Trolli v. Trolli,* 8th Dist. Cuyahoga No. 101980, 2015-Ohio-4487, ¶ 29.

{¶ 14} "The parol evidence rule states that 'absent fraud, mistake or other invalidating cause, the parties' final written integration of their agreement may not be varied, contradicted, or supplemented by evidence of prior or contemporaneous oral agreements, or prior written agreements." *Galmish v. Cicchini,* 90 Ohio St.3d 22, 27, 734 N.E.2d 782 (2000), citing 11 Williston on Contracts (4 Ed.1999) 569-570, Section 33:4. "The principal purpose of the parol evidence rule is to protect the integrity of written contracts." *Id.*

{¶ 15} The record reflects that Daniel owned the Tudor Circle property prior to the parties' marriage. In 2000, Daniel and Sharon moved into the Kramer Road home, which

had been Daniel's parents' home, and Daniel's parents moved into the Tudor Circle home. The Kramer Road home was unencumbered by a mortgage. However, also in 2000, Daniel and Sharon together refinanced the Tudor Circle mortgage in the amount of $91,200, and they used funds from the refinanced mortgage on the Tutor Circle property to improve a garage at the Kramer Road property by turning it into a commercial photography studio and to pay off credit card debt. Sharon helped Daniel with the photography business. In January 2005, Daniel's parents transferred their interest in the Kramer Road property to Daniel and Sharon. Sharon identified the quit claim deed by which this transfer was made. Sharon testified that her impression was that she and Daniel "were given" the Kramer Road property by Daniel's parents; "This was ours now. We have both our names on this deed, and this is for our family and that it was ours, Dan's and mine." Daniel and Sharon continued to pay the Tudor Circle mortgage.

{¶ 16} On August 2, 2005, the Tudor Circle property was refinanced again. The adjustable rate note in the amount of $122,400 identified Sharon alone as the borrower. The lender, Deutsche Bank National Trust Company, filed a complaint in foreclosure in June 2011. On June 2, 2012, Daniel and Sharon transferred their interest in the Tudor Circle property to Michael J. McDorman, a family friend. McDorman then sold the property to Daniel's parents in October 2012. According to Sharon, Daniel's parents "were able to get a loan at like half the house payment that we had previously had. And so it turned out to be a win situation for everyone. We were able to keep that property, they were able to keep a home, we were still paying on that debt, which was half the amount of what had previously been the agreement." She and Daniel continued to make

the mortgage payments on the Tudor Circle mortgage after 2012. Sharon began working in 2018, and afterward she contributed to the Tudor Circle debt from her income. Sharon moved out of the Kramer Road home in February 2021. Daniel's father died in 2022.

{¶ 17} Daniel testified that, when he and Sharon traded houses with his parents, they agreed to pay the mortgage indebtedness he and Sharon had incurred on the Tudor Circle property. He also agreed with Sharon's testimony that when his parents exchanged their home on Kramer Road with him and Sharon for their Tudor Circle property, the Kramer Road property was unencumbered.

{¶ 18} Daniel further testified that, after a discussion with his father shortly before his death, Daniel stopped making the payments on Tudor Circle in September 2021. He testified that at that time his parents began to make the mortgage payments, and then his mother continued to do so after his father's death. He identified a November 24, 2022 mortgage statement for the property with a principal balance of $81,793.13.

{¶ 19} Daniel stated on cross-examination that, although there was no contract requiring him and Sharon to make the mortgage payments on Tudor Circle, the debt was "an obligation I made to my father when we bought the property" According to Daniel, Sharon was aware of the arrangement, and the payments were to continue as long as his parents were alive. Moreover, Daniel stated on redirect examination that the payments he and Sharon made on the Tudor mortgage were made with marital money. Daniel testified that Sharon never raised the issue of there not being a contract requiring payment, and he cited her testimony that she and Daniel had shared a mutual obligation to make the payments.

**{¶ 20}** We agree with Daniel that the parol evidence rule, which was relied on by the trial court, was inapplicable to the classification of the Tudor Circle debt as marital or non-marital, because the integrity of a written contract was not at issue. Daniel's parents did not seek to enforce the oral agreement with Daniel and Sharon, nor did any mortgagor seek such enforcement. Instead, the issue was whether the debt on the mortgage associated with the Tudor Circle property that Daniel and Sharon had agreed to pay -- and did pay for many years -- was a marital debt.

**{¶ 21}** In our view, the trial court abused its discretion in classifying the debt on the Tudor property as non-marital; it also incorrectly stated that Daniel bore the burden of proof on this issue. The debt was incurred during the marriage for the joint benefit of the parties and for a valid marital purpose. Daniel's parents conferred a benefit on Daniel and Sharon by transferring the Kramer Road property to both of them, debt-free, while they agreed to service, and did service, the debt on the Tudor property for Daniel's parents. The Tudor Circle mortgage was refinanced to improve the Kramer Road property and modify the garage to create the photography studio, which generated marital income to pay the debt. Rather than proving that the debt was non-marital, Sharon's testimony confirmed its marital nature. She alone signed the note refinancing the property in 2005, and she acknowledged that, in 2012, although they were no longer parties to the Tudor Circle mortgage, their "loan" was greatly reduced, and they "were still paying on that debt." After she began working in 2018, she contributed her earnings toward repayment of the debt. There is no suggestion that Sharon was misled or that Daniel acted unilaterally regarding the Tudor Circle property. Sharon failed to meet her

burden to demonstrate that the debt was non-marital in nature, and the trial court abused its discretion in determining that the debt was non-marital.

**{¶ 22}** For the foregoing reasons, Daniel's assigned error is sustained.

**{¶ 23}** The judgment of the trial court is reversed as to the division of marital property, and the matter is remanded for further proceedings related to the property division.   In all other respects, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

WELBAUM, J. and LEWIS, J., concur.