[Cite as *Banjoko v. Banjoko*, 2013-Ohio-2566.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

| | | |
|---|---|---|
| VALERIE E. BANJOKO | : | |
| Plaintiff-Appellee | : | C.A. CASE NO.    25406 |
| v. | : | T.C. NO.    10DR995 |
| SAMUEL O. BANJOKO | : | (Civil appeal from Common Pleas Court, Domestic Relations) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . .

**O P I N I O N**

Rendered on the ___21st___ day of ___June___, 2013.

. . . . . . . . . .

STEPHEN E. KLEIN, Atty. Reg. No. 0014351, 240 Bohanan Drive, Vandalia, Ohio 45377
　　　Attorney for Plaintiff-Appellee

KATHY L. ELLISON, Atty. Reg. No. 0033808, 131 N. Ludlow Street, #382, Dayton, Ohio 45402
　　　Attorney for Defendant-Appellant

. . . . . . . . . .

FROELICH, J.

　　　**{¶ 1}**　Samuel O. Banjoko appeals from a Final Judgment and Decree of Divorce entered by the Montgomery County Court of Common Pleas, Domestic Relations

Division.   Mr. Banjoko objects to the portion of the trial court's judgment that disposed of his retirement accounts by awarding all or part of these accounts to Valerie E. Banjoko.

{¶ 2}    The Banjokos were married in January 2000; they had no children together. Mrs. Banjoko filed a complaint for divorce in September 2010.

{¶ 3}    Mr. Banjoko began his career at UPS in 1978, working part-time on the loading docks.   After eleven years in that position, he became a driver and a member of the Teamsters union.   He worked full-time as a driver for approxiamtely ten years.   He became a management supervisor with UPS in late 2000 or early 2001, "just prior to [his] marriage." Mr. Banjoko lost his job with UPS in August 2002.   During the parties' divorce proceedings, the trial court heard evidence about Mr. Banjoko's retirement accounts with UPS and subsequent transfers from those accounts.   Mrs. Banjoko worked at a department store during the marriage, but she did not have a pension or other retirement accounts.

{¶ 4}    Mr. Banjoko testified that he contributed to his retirement accounts during his employment with UPS until he became a manager; at that time, his eligibility for the plan changed, in part because he was no longer a member of the Teamsters' Union.   After he became a manager and after his separation from employment with UPS, he no longer added money to the accounts, but he transferred his retirement funds among various similar accounts and management companies as part of his efforts to manage funds.   Mr. Banjoko testified that "after [his] separation from UPS, * * * that account was just sitting down there. Nobody [was] managing it," so he transferred the funds among retirement accounts with several companies.   He testified, however, that all of the funds in the accounts were contributed prior to his promotion to management, which was also prior to his marriage.

**{¶ 5}**    The parties presented several statements from retirement plans, about which Mr. Banjoko testified.  The statements supported Mr. Banjoko's assertions that he had not contributed money to the retirement accounts, except for the reinvestment of income generated by the accounts themselves, with one $75 exception.  Mr. Banjoko was questioned about one retirement plan statement which indicated a $75 "IRA Contribution" to the Allianz Life Insurance Annuity; he explained that it was either a "fee" or made up a shortfall "of the $10,000 that was supposed to be there" when the account was opened.  The parties disagreed about whether Mr. Banjoko had provided copies of all the monthly statements that had been requested by Mrs. Banjoko's attorney.

**{¶ 6}**    Mrs. Banjoko's testimony at the hearing did not address, in any way, Mr. Banjoko's retirement accounts.   She did not claim that contributions had been made to those accounts from marital funds or at any time during the marriage.

**{¶ 7}**    In its Final Judgment and Decree of Divorce, which was filed in February 2012, the trial court made the following findings with respect to Mr. Banjoko's retirement accounts:

> **Allianz:**   The court found that the Allianz Life Insurance Company account, which had a balance of $12,732.94 as of December 30, 2010, was marital property and that half of the balance as of the date of the decree should be awarded to Mrs. Banjoko.
>
> **Citicorp**:   The court found that $19,951.07 of the Citicorp Investment Services Account was marital property, and that half of this amount, or $9,975.54, should be awarded to Mrs. Banjoko.

**CitiGroup**: The court found that the entire value of Mr. Banjoko's CitiGroup Global Market IRA, $35,622.11, was marital property and awarded half of that amount to Mrs. Banjoko.

**United Planners**: The court found that the marital share of the United Planners Financial Services of America 401(k) account was $14,674.63 and awarded the entire amount to Mrs. Banjoko.

**UPS Savings Plan**: The court found that the $24,634.85 contained in Mr. Banjoko's UPS Savings Plan account was non-marital property and awarded it entirely to Mr. Banjoko.

**American General**: The court found that the entire amount contained in Mr. Banjoko's American General Annuity Fund account was non-marital property and awarded it to Mr. Banjoko. No specific dollar value was stated with respect to this account.

{¶ 8} Five days after the Final Judgment and Decree of Divorce was filed, Mr. Banjoko filed a motion for relief from judgment. In that motion, he asserted that there was only one account with Citicorp/CitiGroup, which was created prior to the marriage; the name of the account had changed several times. Although the motion mentioned other disagreements with the court's conclusions regarding marital and non-marital property, the motion only asked the court to recognize that there was only one Citicorp/Citigroup account and to make "an equitable division" of that account.

{¶ 9} In addressing the motion for relief from judgment, the trial court conducted a pretrial conference with the attorneys, but no testimony was presented at that time. As a

result of their discussions, the trial court concluded that there was only one Citicorp account, a "Citi Retirement Account" managed by Pershing LLC. The court scheduled a hearing at which additional evidence would be presented about "the equitable division of this account."

{¶ 10} At a hearing on May 22, 2012, Mr. Banjoko testified that the Citicorp account was created through his union employment with UPS; he reiterated that, when he became a manager just prior to the parties' marriage, he could no longer contribute to this account. Mr. Banjoko testified that, prior to his marriage, he owned 402 shares of UPS stock, as demonstrated by his Citicorp statements from that time. He also held interests in two mutual funds through Citicorp. Mr. Banjoko stated that he and Mrs. Banjoko had been permitted to make additional contributions to these plans between the time of their marriage and the date of his termination from UPS, but that they had been "financially strained" and had been unable to do so.

{¶ 11} Mr. Banjoko testified that he moved $10,000 from the Citicorp account to Allianz in 2007, but he retained the 402 shares of stock at Citicorp. He also stated that Citicorp, on its own initiative, "took [money] out of one [account] and dumped [it] into the other." Mr. Banjoko repeatedly stated that he did not put more money into these accounts, but was able to convert some of the funds to other assets, including the purchase of additional shares of UPS stock, due to increases in the value of the investments. According to Mr. Banjoko, he acquired the Allianz and United Planners accounts as a result of such a conversion of retirement funds.

{¶ 12} Mr. Banjoko further testified that, when he lost his job, he withdrew $25,000 from his UPS retirement account, transferring it to an account called "Joko

Enterprises," because they were "financially in stress." He stated that Mrs. Banjoko knew of and consented to this transfer. Although they had hoped to repay the money, only $2,000 was repaid, and Mr. Banjoko incurred a tax liability (after the divorce)[1] on the amount that they had been unable to repay within the prescribed period.

{¶ 13} Mrs. Banjoko testified that Mr. Banjoko had handled their financial affairs and that she had had limited knowledge of account transfers, loans, etc. She testified that Mr. Banjoko was not being truthful when he stated that she had known of these transactions. However, Mrs. Banjoko did not assert that any of the funds in these accounts were marital property.

{¶ 14} On June 22, 2012, the trial court issued a decision stating that the parties had agreed there was only one Citicorp retirement account, which had a balance of $35,429.41 as of May 2011. The court acknowledged that Mr. Banjoko had testified that all of the funds in this account were deposited prior to the marriage, although the value of the investment had grown in value due to increases in the value of the UPS stock and dividends paid on the stock. The court found that Mr. Banjoko's testimony that no funds were placed in the account after the parties' marriage was credible, that only one account existed, and that it was a non-marital asset. Thus, the court ordered that Mr. Banjoko retain the Citicorp account "free and clear of any claim of" Mrs. Banjoko. An Amended Final Judgment and Decree of Divorce was filed to reflect this change.

{¶ 15} Mr. Banjoko filed a notice of appeal from the Amended Final Judgment

---

[1]Mr. Banjoko testified that he had sixty months to repay the withdrawal before incurring the tax consequences of the withdrawal.

and Decree of Divorce, raising one assignment of error.

> THE TRIAL COURT ERRED IN AWARDING A SHARE OF APPELLANT'S ALLIANZ LIFE INSURANCE COMPANY OF NORTH AMERICA AND UNITED PLANNERS' FINANCIAL SERVICES OF AMERICA RETIREMENT ACCOUNTS TO APPELLEE SINCE THEY WERE FULLY FUNDED WITH APPELLANT'S PREMARITAL CONTRIBUTIONS TO HIS UNITED PARCEL SERVICE UNION PENSION ACCOUNTS AND THE TRIAL COURT FAILED TO PROVIDE WRITTEN FINDING[S] OF FACTS TO EXPLAIN FACTORS USED TO DETERMINE THAT THE SPOUSE'S SEPARATE PROPERTY SHOULD NOT BE DISBURSED TO THAT SPOUSE.

{¶ 16}    Mr. Banjoko contends that the trial court erred in concluding that the Allianz and United Planners accounts were marital property, because the funds for those accounts came from union retirement accounts with UPS, which were funded before the marriage.  Thus, he claims that the Allianz and United Planners accounts held separate property and should have been awarded to him in their entirety.  Mr. Banjoko characterizes such treatment of the accounts as "the next obvious step" from the court's ruling on the motion for relief from judgment.  He also claimed that the trial court should have made findings of fact in support of its conclusions.

{¶ 17}    Pursuant to Civ.R. 52, the trial court was not obligated to provide written findings of fact in the absence of a request for such findings, and Mr. Banjoko did not make such a request.  Additionally, we do not share Mr. Banjoko's view that a review of the

alleged errors with respect to the Allianz and United Planners accounts "obviously" follows from the court's decision on the motion for relief from judgment with respect to the Citicorp accounts; with respect to the Citicorp accounts, there was confusion over the number of accounts and the amounts in them, as well as the source of funds. However, the treatment of the accounts is related, and Mr. Banjoko has properly raised the issues with respect to the Allianz and United Planners accounts on appeal.

{¶ 18} In an action for divorce, the trial court must determine what constitutes marital property and what constitutes separate property, divide the marital property equitably between the parties, and "disburse a spouse's separate property to that spouse." R.C. 3105.171(D). A trial court's classification of property as marital or separate must be supported by competent, credible evidence. *Mays v. Mays*, 2d Dist. Miami No. 2000-CA-54, 2001 WL 1219345, * 3 (Oct. 12, 2001); *Renz v. Renz*, 12th Dist. Clermont No. CA2010-05-034, 2011-Ohio-1634, ¶ 17. Then, in considering whether a trial court's division of marital assets and liabilities is fair and equitable, appellate courts review a trial court's decision under an abuse of discretion standard. *Koegel v. Koegel*, 69 Ohio St.2d 355, 357, 432 N.E.2d 206 (1982); *Mays*, *supra*. An abuse of discretion implies that the trial court's attitude was unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 19} The definition of marital property includes all real and personal property that currently is owned by either or both of the spouses, including "retirement benefits [that were] acquired by either or both of the spouses during the marriage." R.C. 3105.171(A)(3)(a)(i). Separate property includes all real and personal property and any

interest in real or personal property "that was acquired by one spouse prior to the date of the marriage," and "passive income and appreciation acquired from separate property by one spouse during the marriage."   R.C. 3105.171(A)(6)(a)(ii) & (iii).

{¶ 20}   The burden of proof that specific property is not marital, but separate, is upon the proponent of the claim to prove by a preponderance of the evidence.  *Peck v. Peck*, 96 Ohio App.3d 731, 734, 645 N.E.2d 1300 (12th Dist.1994); *Snyder v. Snyder*, 2d Dist. Clark No. 2002-CA-6, 2002-Ohio-2781, 2002 WL 1252835 * 3 (June 7, 2002).   "Once it is proven that specific property was the separate property of one of the spouses at, or after, the time of the marriage, the burden shifts to the other spouse to prove, by clear and convincing evidence, that the property, or some interest therein, has been given to the other spouse." *Snyder* at * 3, citing *Helton v. Helton*, 114 Ohio App.3d 683, 685, 683 N.E.2d 1157 (2d Dist.1996).

{¶ 21}   As described above, Mr. Banjoko testified without contradiction that the funds in all of his retirement accounts were contributed prior to the marriage, before he became a manager at UPS, with the exception of $75 that was contributed to the Allianz account in order to meet the minimum contribution or as some sort of fee.   Many documents related to these accounts were also presented to the court, and these documents corroborated Mr. Banjoko's assertion that, once the accounts had been created with money transferred from his retirement accounts with UPS, no additional contributions were made other than those generated by returns on the investments.   The documents included monthly, quarterly, and annual statements at various points, mostly near the time of the marriage and the time of the divorce, but all of the statements for each account were not presented; Mrs. Banjoko

claimed that she was not provided with copies of all the statements she requested. Mrs. Banjoko did not testify or present any documentary evidence that marital funds had been deposited into Mr. Banjoko's retirement accounts.

{¶ 22} In its decision on the motion for relief from judgment, the trial court specifically held that Mr. Banjoko's testimony about the sources of the funds in his Citicorp retirement accounts was credible. Although the court did not comment on the credibility of the testimony with respect to the other retirement accounts, Mrs. Banjoko did not contradict Mr. Banjoko's claim that all of the funds in the retirement accounts originated in the UPS retirement accounts and that he stopped depositing funds into those accounts before the parties' marriage. The other transfers were not of a different nature than the ones to Citicorp, and there is no suggestion in the record that the trial court disbelieved Mr. Banjoko's testimony. Pursuant to R.C. 3105.171(A)(6)(a)(iii), if the funds deposited into the accounts were separate property, any appreciation or passive income earned from those funds was also separate property.

{¶ 23} Based on the evidence presented, we conclude that Mr. Banjoko met his burden to establish, by the preponderance of the evidence, that the funds in his retirement accounts were separate property. In response, Mrs. Banjoko failed to prove, by clear and convincing evidence, that the retirement accounts contained marital property; indeed, her testimony did not even include such an allegation. Under these circumstances, the trial court abused its discretion in ordering that the Allianz and United Planners accounts contained marital property and in awarding half (as with Allianz) or all (as with United Planners) of the account balances to Mrs. Banjoko.

**{¶ 24}** The assignment of error is sustained.

**{¶ 25}** The judgment of the trial court will be reversed with respect to the Allianz and United Planners retirement accounts; these accounts will be awarded to Mr. Banjoko. In all other respects, the judgment of the trial court will be affirmed.

. . . . . . . . . .

DONOVAN, J. and DONOFRIO, J., concur.

(Hon. Gene Donofrio, Seventh District Court of Appeals, sitting by assignment of the Chief Justice of the Supreme Court of Ohio).

Copies mailed to:

Stephen E. Klein
Kathy L. Ellison
Hon. Timothy D. Wood