**[Cite as *Paterchak v. Paterchak*, 2013-Ohio-3043.]**

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## MONTGOMERY COUNTY

BRYAN S. PATERCHAK

       Plaintiff-Appellant

v.

TAMMIE K. PATERCHAK


       Defendant-Appellee


Appellate Case No.    25383

Trial Court Case No.   2009-DR-1006

(Civil Appeal from Common
 Pleas Court - Domestic Relations)

. . . . . . . . . . .

# O P I N I O N

Rendered on the 12th day of July, 2013.

. . . . . . . . . . .

CHARLES D. LOWE, Atty. Reg. No. 0033209, 8087 Washington Village Drive, Suite 102, Dayton, Ohio 45458
      Attorney for Plaintiff-Appellant

TERRY L. LEWIS, Atty. Reg. No. 0010324, 10 West Second Street, Suite 1100, Dayton, Ohio 45402
      Attorney for Defendant-Appellee

. . . . . . . . . . . .

WELBAUM, J.

**{¶ 1}** Plaintiff-Appellant, Bryan Paterchak, appeals from a judgment and decree of divorce allocating the assets and debts of Bryan and his wife, Tammie Paterchak.[1] Bryan contends that the trial court abused its discretion by requiring him to pay the entire first and second mortgage debts on the marital premises. Bryan further contends that the trial court erred in requiring him to pay the entire Chase credit card debt.

**{¶ 2}** We conclude that the trial court did not abuse its discretion in dividing the assets and liabilities of the parties. Accordingly, the judgment of the trial court will be affirmed.

## I. Facts and Course of Proceedings

**{¶ 3}** Bryan and Tammie began living together around 1983 or 1984, and were married in November 1992. Prior to the marriage, Bryan inherited $195,664 from his aunt. In June 1990, Bryan purchased a home at 335 Enfield Road in Centerville, Ohio, for $108,750. The property was titled solely in Bryan's name. Bryan made a down payment of $55,259, leaving a balance due of $53,491. Subsequently, in 2002, Bryan inherited $128,646 from his mother.

**{¶ 4}** During the marriage, Tammie paid one-half of the house payment and also contributed to household expenses. However, the parties kept their finances and credit card accounts separate. Bryan was employed as a chef, and Tammie worked at bars. By all accounts, they lived somewhat extravagantly, taking expensive vacations twice a year, buying expensive jewelry and automobiles, and so on. At the time of the divorce hearing, Bryan earned

---

[1] For purposes of convenience, we will refer to the parties by their first names.

about $30,000 per year, and Tammie earned approximately $16,000 annually.

{¶ 5}  Bryan testified that he refinanced the home mortgage at some point to pay off credit cards.  Bryan did not provide the trial court with information about the amount of the credit card debt, the identity of the credit card holders, or even the date of the mortgage to National City Bank.  Bryan indicated that he owed $117,581 on the National City Bank mortgage at the time of the parties' separation in February 2009, and that he owed $112,000 at the time of the final divorce hearing, which was held on August 31, 2011.

{¶ 6}  Bryan further testified that he took out a second mortgage to pay off credit cards.  He, again, did not furnish documentation indicating which credit cards were paid, to whom the cards belonged, or what amounts were paid.

{¶ 7}  In contrast, Tammie testified that she only became aware of what Bryan did with his credit cards when he financed the second mortgage.  She indicated that Bryan was going to bars and strip clubs and was engaging in other similar activities.  After Tammie saw a few credit card statements, Bryan became very angry and would not let her see any of the financial documents.  The amount due on the second mortgage at the time of separation was $48,994.

{¶ 8}  At the final divorce hearing, Bryan estimated that the value of the house was $137,000.  Thus, the property had a negative equity of $23,994.

{¶ 9}  Bryan did submit his own credit card statements from Chase and Bank of America, at of the time of the separation.  The balance on the Chase card was approximately $21,209.  According to Bryan, the card was used to purchase things that he accumulated after a fire at his home, because he did not have enough money for the interior of the house.  Bryan testified that the Chase card was used mostly for things that he lost.  Both Bryan and Tammie

testified that Bryan received insurance checks to replace the furniture. However, Bryan failed to submit any documentation indicating the amount of the insurance proceeds, nor did he provide documentation establishing any specific amounts that were spent.

{¶ 10} The balance on the Bank of America credit card was $19,613.64. Again, Bryan testified that this card was used to purchase things accumulated after the fire, but he failed to submit any specific documentation to prove what items were purchased.

{¶ 11} A business was also started during the marriage. Tammie testified that "they" decided to go into business and that Bryan said he would fund it. Tammie also said that she agreed to pay him back. Bryan furnished $20,000, and Tammie paid him $2,000. According to Tammie, Bryan then received about $6,000 from income taxes each year that he took solely for himself. In contrast, Bryan testified that he never got the money back. He did not have Tammie sign a promissory note, and neither side submitted any documentation in connection with this matter.

{¶ 12} The only witness at the divorce hearing other than the parties was Tammie's father, Russell Dean. Dean testified about three Vanguard accounts that he had established on Tammie's behalf, as gifts. The first account was a Vanguard Growth and Income Account in the names of Tammie and Dean as joint tenants with rights of survivorship. At the time of the hearing, the value of the account was approximately $30,492. Dean started the fund for Tammie approximately 15 years earlier, and the money came from Dean's own earnings and investments.

{¶ 13} The second account was a Vanguard brokerage account, again in the names of Dean and Tammie. Dean testified that he had also started this account about fifteen years earlier, and that Tammie had never contributed any money to the account. Dean had taken

money out of the account at various times, but Tammie had never withdrawn funds. Dean stated that he had established similar accounts for his son, for purposes of estate planning, so that the money would automatically go to the surviving child. As of June 30, 2011, the amount in this account was approximately $258,836. Dean testified that he had never told Tammie about this account, and that to his knowledge, she only learned about the account during the divorce action.

{¶ 14} Finally, the third Vanguard account, an IRA, was one that Dean had established for Tammie in the late 1970's. As with the other accounts, Tammie had never contributed; the money solely came from Dean. This account was solely in Tammie's name, and it contained about $264,733 as of June 30, 2011.

{¶ 15} Tammie testified about another Vanguard account that her father had started for her, by contributing about $3,000. She indicated that this account was in her name and in Bryan's name, and had grown to approximately $7,000 before the separation. Tammie claimed that Bryan had closed this account and had taken all the money. She did not submit any documentation regarding this account.

{¶ 16} After hearing the evidence, the trial court awarded Bryan the marital home, and also required that he pay the first and second mortgages on the premises. The court awarded half of Bryan's $7,618 retirement fund to Tammie, and permitted her to retain all the Vanguard accounts, free and clear of any claim by Bryan. In addition, the court ordered Bryan to pay the total indebtedness on the Chase card. Each party was ordered to pay one-half of the debt to Bank of America. The court additionally rejected Bryan's request for a distributive award. Bryan appeals from the judgment and decree of divorce.

II. Did the Trial Court Abuse its Discretion

in Requiring Bryan to Pay the First and Second Mortgage Debt?

{¶ 17} Bryan's First Assignment of Error states that:

The Court Abused its Discretion and Erred as a Matter of Law in Requiring Husband to Pay the Entire First and Second Mortgage Debt.

{¶ 18} Under this assignment of error, Bryan contends that the house was refinanced to pay off credit card debt the parties incurred during the marriage, and that this debt should be divided equally. According to Bryan, $17,000 of the first mortgage debt and the entire second mortgage debt of $48,884 are marital debts.

{¶ 19} "Marital debt has been defined as any debt incurred during the marriage for the joint benefit of the parties or for a valid marital purpose." *Lucas v. Lucas*, 7th Dist. Noble No. 11 NO 382, 2011-Ohio-6411, ¶ 33, citing *Ketchum v. Ketchum*, 7th Dist. Columbiana No. 2001 CO 60, 2003-Ohio-2559, ¶ 47. (Other citation omitted.) "Debts incurred during the marriage are presumed to be marital unless it can be proved that they are not." *Id.*, citing *Vergitz v. Vergitz*, 7th Dist. Jefferson No. 05 JE 52, 2007-Ohio-1395, ¶ 12. (Other citation omitted.) In addition, "[t]he party seeking to establish a debt is separate rather than marital bears the burden of proving this to the trial court." *Id.* (Emphasis and citation omitted.) *Accord Bennett v. Bennett*, 2d Dist. Clark No. 2012 CA 36, 2012-Ohio-5788, ¶ 44.

{¶ 20} "A trial court's classification of property as marital or separate must be supported by competent, credible evidence. Then, in considering whether a trial court's division of marital assets and liabilities is fair and equitable, appellate courts review a trial court's decision under an abuse of discretion standard." (Citations omitted.) *Banjoko v. Banjoko*, 2d Dist.

Montgomery No. 25406, 2013-Ohio-2566, ¶ 18. "An abuse of discretion implies that the trial court's attitude was unreasonable, arbitrary or unconscionable." *Id*., citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 21} At trial, the parties disputed the extent to which the mortgages could be attributed to marital debt. The testimony indicated that the parties used their own credit cards for their purchases, and were unaware of the purchases for which the other spouse's cards were being used. Furthermore, Tammie indicated that she had concerns over the use of Bryan's credit cards, because the few times she had been able to see statements, he had incurred charges for strip clubs and other similar activities. Bryan also failed to offer any proof of what amounts were incurred on the credit cards and what specific amounts were paid off when the mortgages were refinanced. Presumably, such documentation would have existed and would have helped establish the amount of the mortgages, if any, that were marital debts.

{¶ 22} Finally, both parties admitted that Tammie paid one-half of the mortgage payments during the marriage, which lasted from November 1992 to February 2009 – a period of nearly 17 years. Tammie did not receive any credit for these payments when the trial court divided the assets and liabilities. Under the circumstances, the division of debt was supported by competent, credible evidence, and the trial court did not act unreasonably in awarding both the debt and the marital home to Bryan.

{¶ 23} Bryan's First Assignment of Error is overruled.

III. Did the Trial Court Abuse its Discretion

Regarding the Chase Credit Card Debt?

**{¶ 24}** Bryan's Second Assignment of Error states that:

The Court Abused its Discretion in Ordering Husband to Pay All of the Chase Credit Card Debt.

**{¶ 25}** Under this assignment of error, Bryan contends that the trial court's rationale in requiring him to pay the entire amount of the $21,209 Chase credit card debt is not supported by the record. In this regard, the trial court's decision referred to testimony by Bryan that he was willing to assume this debt, but wanted Tammie to pay one-half of the Bank of America credit card debt. Decision, Doc. #42, p. 7. Bryan contends that the trial court is incorrect, and that Bryan, instead, asked the court to have Tammie pay one-half of the Chase and Bank of America credit card debts.

**{¶ 26}** Tammie contends that the trial court's decision was reasonable, in view of the following facts: (1) Bryan was not ordered to pay any part of the $8,000 in credit card debt that Tammie incurred by the time of separation; (2) Bryan was not required to repay $7,000 that he removed from the marital Vanguard account; (3) Bryan failed to establish the amount of money he received from insurance compensation after the fire; and (4) Bryan failed to establish the specific amounts of any expenditures on the Chase credit card.

**{¶ 27}** Again, we review the trial court's decision on division of debt for abuse of discretion. *Banjoko*, 2d Dist. Montgomery No. 25406, 2013-Ohio-2566, at ¶ 18.

**{¶ 28}** Regarding the Chase credit card, the following exchange occurred during Bryan's direct examination:

Q. How was this debt – how did that debt accumulate? What was purchased?

A.   The debt was accumulated mostly because I had a fire at my house and I didn't have enough money for the interior.   So I had to use my charge card for a lot of things I lost in the fire.

Q.   Are these things your wife lost in the house also?

A.   Mostly things I had lost in the fire.   Trial Transcript, p. 39.

{¶ 29}   Subsequently, Bryan testified that the Bank of America credit card was used for "family purchases" and that Tammie benefitted from those purchases.   *Id*. at p. 40.

{¶ 30}   In addition, the following further exchange occurred during Bryan's direct examination:

Q.   And are you asking the court to have her contribute one-half – to at least the credit card that you testified was for family purchases?

A.   Yes.   *Id*. at p. 49.

{¶ 31}   Later, during Bryan's redirect examination, the following exchange took place:

Q.   * * *

So two credit card accounts.   Are you asking the Court to direct your wife to pay one-half of either or both.

And that's really a matter of – it's not my place to say it, but it depends on whether those debts were incurred for family expenses or for you solely.

A.   I would say for family expenses.   Trial Transcript, p. 63.

{¶ 32}   In view of Bryan's conflicting statements, the trial court was entitled to believe Bryan's initial testimony, in which he stated that the Chase credit card was used to purchase items for himself, and that he wanted the court to order Tammie to pay one-half of the Bank of

America card, which had been used for family purposes.

{¶ 33}    The court was not required to believe Bryan's later testimony that the debts were incurred for family purposes, particularly since it occurred after prompting by his attorney.    We also note that Bryan never disclosed to the court the amounts he had received from insurance settlements for the fire.    Presumably, those documents were available to Bryan and would have been helpful to the court.    Consistent with Bryan's testimony during direct examination, the trial court ordered Bryan to pay the Chase credit card, and ordered Tammie to pay one-half of the Bank of America credit card.    This was not unreasonable.

{¶ 34}    Based on the preceding discussion, the Second Assignment of Error is overruled.

IV.   Conclusion

{¶ 35}    All of Bryan's assignments of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . .

FROELICH and HALL, JJ., concur.


Copies mailed to:

Charles D. Lowe
Terry L. Lewis
Hon. Timothy D. Wood