[Cite as *Trolli v. Trolli*, 2015-Ohio-4487.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 101980**

**LINDSAY A. TROLLI**

PLAINTIFF-APPELLEE

vs.

**CHRISTOPHER TROLLI**

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Domestic Relations Division
Case No. DR-11-337385

**BEFORE:** Kilbane, P.J., Stewart, J., and Laster Mays, J.

**RELEASED AND JOURNALIZED:** October 29, 2015

**ATTORNEYS FOR APPELLANT**

Joseph G. Stafford
Carolyn Soeder
Stafford & Stafford Co., L.P.A.
55 Erieview Plaza - 5th Floor
Cleveland, Ohio 44114

**ATTORNEY FOR APPELLEE**

Anna M. Parise
Dworken & Bernstein Co., L.P.A.
60 South Park Place
Painesville, Ohio 44077

MARY EILEEN KILBANE, P.J.:

{¶1} Defendant-appellant, Christopher Trolli ("Christopher"), appeals from the final decree issued by the Domestic Relations Division of the Cuyahoga County Common Pleas Court in the divorce action filed by plaintiff-appellee, Lindsay Trolli ("Lindsay"), and also challenges the trial court's denial of his motion to reopen the matter. Having reviewed the record and the controlling case law, we find no prejudicial error and affirm the matter in its entirety.

{¶2} The parties were married on October 29, 1999, and had one child who was born on April 23, 2001. On July 8, 2011, Lindsay filed a complaint for divorce with support pendente lite. On August 30, 2011, Christopher filed a counterclaim for divorce. The family resided together until Lindsay and the child moved out on October 1, 2011.

### Pretrial Orders

{¶3} In an interim order dated September 26, 2011, and again in an agreed judgment entry dated December 22, 2011, Christopher was ordered to pay the mortgage, real estate taxes, real estate insurance, and utilities for the marital home, pending further order of the court. The December 22, 2011 agreed judgment entry also ordered Christopher to pay interim child support in the amount of $340.65 (including any private health insurance), or alternatively, $313.59 (in the event that private health insurance was not provided), plus $72 in "cash medical support." Christopher was also ordered to pay interim spousal support, commencing December 1, 2011, in the sum of $250 per month, based upon his stated annual gross income of $35,000. The parties also entered into an agreed parenting plan that settled issues regarding the allocation of parental rights, but not financial issues. This agreed parenting plan was approved by the court on February 6, 2013.

### Trial on the Merits

## A. Lindsay's Evidence

{¶4} The case proceeded to trial from February 5, 2014, until February 14, 2014. The parties stipulated that they were each entitled to a divorce on the basis of incompatibility. As is relevant to the remaining issues presented herein, the evidence presented by Lindsay indicated that, during the marriage, she assisted with the billing and recordkeeping for Trolli Landscaping and Snowplowing, L.L.C. ("Trolli Landscaping"), a business that was started by Christopher prior to the marriage. Lindsay also worked in child care, and then obtained her LPN degree at the end of 2011. By the start of trial, Lindsay had been working as a field nurse for Protem Health Services ("Protem"), making home health visits to patients. She receives $25 per visit, but no mileage reimbursement or other benefits. Lindsay generally completes 20 home health visits per week. The evidence also demonstrated that Lindsay has asked her employer to assign additional patients to her so that she could earn additional money. Christopher works at Trolli Landscaping, and he engages in landscaping in the summer months and snow plowing in the winter months.

{¶5} On cross-examination, Christopher stated that Trolli Landscaping is a Subchapter S corporation. Under that corporate structure, the corporation does not pay income tax, and the income and deductions are passed directly to the members, Christopher and Lindsay, who receive IRS Schedule K-1 statements of income and deductions. For tax year 2010, Trolli Landscaping had gross receipts of $128,471. Christopher reported net income of $24,000, in addition to unemployment compensation in the amount of $13,460. A tax refund in the amount of $6,788 was issued for this tax year in connection with the parties' joint tax return. In 2011, Trolli Landscaping had gross receipts of $132,167. Christopher's income for that year was $16,000. In 2012, he received an income of $24,000, in addition to $5,652 in unemployment compensation. In 2013, Christopher derived $20,418 in income from the business, and he also received

approximately $5,000 in unemployment compensation. Christopher admitted that he did not file tax returns for tax years 2011, 2012, or 2013. He also admitted that he had mixed his personal funds with his business funds, and some personal expenses including his cell phone and other items have been paid through the corporate accounts.

{¶6} Christopher's checking account records indicate that, on a monthly basis, he deposited generally anywhere from $500 to $1,500 from his business account to his personal account as reimbursement for the purchase of business related expenses. He testified that most of these reimbursements were for the purchase of fuel, but his recordkeeping was lax and there was no clear description of some of the reimbursed expense items.

{¶7} Christopher acknowledged that he and Lindsay are the sole shareholders of the corporation, and they each own 50 shares. Christopher is the president and treasurer, and Lindsay is listed as the vice president and secretary of the corporation. Christopher stated that the corporation was informally run and, as president, he made all key corporate decisions, including purchases and loans. Christopher stated, however, that since the parties' separation, Lindsay has had no interest in the operation of the business. Christopher also acknowledged that he purchased a mower for the company after the separation, and he removed Lindsay from two Trolli Landscaping bank accounts at PNC Bank.

{¶8} Christopher also testified on cross-examination that the parties had amassed considerable debt during the course of their marriage, including debt from the business, consumer debt, and mortgages on the marital home.

{¶9} As to the business debt, Christopher testified on cross-examination that the business had purchased various pickup trucks, a dump truck, trailer, mowers, and other equipment. Most of these items were paid in full by the date of the trial, but Christopher testified that his father,

Louis Trolli ("Louis"), had loaned the business considerable funds throughout the parties' marriage. According to Christopher's evidence, the unpaid total debt to Louis was $84,000 at the time of trial, and this included a loan for $16,000 used for the 2013 or postseparation purchase of a 2005 Silverado truck. A 52" mower was also purchased after the parties' separation.

{¶10} Regarding the marital home, Christopher acknowledged that it was purchased in 2001 for $126,500, with a $28,500 down payment, and a mortgage from Green Tree Mortgage Company ("Green Tree"). Christopher testified that $20,650 of the down payment was obtained from his sale of stock, and the remainder of the down payment was provided by Louis. Christopher admitted that he has not paid the mortgage, taxes, and insurance on the premises, in violation of the 2011 court orders, since the summer of 2012, and the home is currently in foreclosure. There is also a second mortgage on the property in the amount of $9,000. Christopher asserted that the home is "underwater," meaning that the total debt exceeds its fair market value. Lindsay's bankruptcy has discharged her from these obligations, and she executed a quit claim deed of her interest in the home to Christopher in 2013. Christopher also maintained that he has been unable to refinance the house because of Lindsay's bankruptcy.

{¶11} As to the consumer debt, Christopher stated that there were debts on 11 credit cards and debt from the purchase of a 2004 Jeep driven by Lindsay. The outstanding balance on these accounts ranged from $800 to $13,000. Christopher also used a Discover card issued in Louis's name. He admitted that Lindsay had no access to this account during the marriage. Christopher also admitted that he had also been solely responsible for the debts on the Home Depot, HH Gregg, Tractor Supply, and Dick's Sporting Goods credit cards. Lindsay received a bankruptcy discharge in connection with some of the accounts. By the date of trial, Christopher also settled

several other outstanding credit card debts for lesser amounts. As a result, the parties were issued several 1099-C Cancellation of Debt Statements that will in turn have tax implications for them.

{¶12} Christopher also admitted that he has paid only $160 per month for spousal support, despite the interim court orders requiring him to pay $250 per month. He asserted that the court orders were derived from Lindsay's false and inflated claim that he earns $75,000 per year. Christopher stated that his actual income is less than $35,000 per year, so he is actually due a credit upon proper recalculation of the support order. In the subsequent agreed order issued in December 2011, however, the parties indicated that Christopher's gross income was $35,000 per year.

{¶13} Lindsay testified that prior to obtaining her LPN degree at the end of 2011, she worked part-time in marketing. She was also an employee of Trolli Landscaping and assisted with billing and account management. She and Christopher were issued yearly IRS Schedule K-1 statements of income and business deductions from the Subchapter S corporation. Lindsay testified that during the marriage when the couple's bills became due, she was issued a paycheck from the business that was then deposited in the parties' personal bank account and used for paying the bills. If additional funds remained in the business account at the end of the year, this was paid to the parties as a "dividend." Since their separation, however, Lindsay has not received income or dividends from the business.

{¶14} Lindsay also admitted that marital funds were used for her nursing education. She stated that she had planned for her degree to generate funds for her family, but Christopher's issues caused the couple to break up. Lindsay also testified that she has no health insurance or benefits with her job at Protem. Following their separation, Christopher removed her name from several bank accounts. In addition, in exchange for receiving the title to the 2004 Jeep, Lindsay agreed

to execute a quit claim deed to Christopher for her interest in the marital home. She then used the 2004 Jeep as a trade-in for the purchase of a 2010 Dodge Journey. Lindsay's parents are listed as the owners of the 2010 Dodge Journey, and they make the monthly loan payments for it.

{¶15} Lindsay also testified regarding various issues in connection with late payments and unpaid premiums on the Medical Mutual health insurance that Christopher was required to pay according to the parties' interim court orders. She admitted, however, that she repeatedly changed the billing address for this account and that Christopher had no control over receipt of billing information, often resulting in his late notice of the bills. Lindsay also admitted that Christopher promptly reinstated the insurance after it had lapsed because of nonpayment.

{¶16} With regard to the corporate debts, Lindsay denied that Louis had loaned money to the business. She acknowledged, however, that she listed $50,000 of loans from Louis in her April 2014 bankruptcy petition. She also admitted that some corporate checks had been issued to Louis as "repayment of loans," but she stated that the payments were made at Christopher's direction as treasurer. Lindsay informed the court that if she is charged with paying for half of the corporate debts, then she would in turn assert a claim for a portion of the business assets. She otherwise asserted no claim in Trolli Landscaping.

### B. Christopher's Evidence

{¶17} Proceeding with Christopher's case, attorney Megan Corsi ("Corsi") testified that she served as guardian ad litem ("GAL") in this matter. According to Corsi, on September 12, 2013, the parties reached an agreement on all of their outstanding disputes. When it was time to sign this document, however, Lindsay left the courtroom without signing it, and her former attorney took all of the original drafts.

{¶18} Louis next testified that he is a CPA. Although another accountant prepared Trolli Landscaping's first Subchapter S corporation tax filing, Louis then served as an unpaid tax preparer of Trolli Landscaping's tax returns from 2007 onward. Though the business and personal funds had been commingled, all of the couple's expenditures were reviewed and business deductions were taken only for business expenses. Louis testified regarding a list of loans that he made to the company from 2010 to 2013, totaling $89,000. According to Louis, this money was loaned to keep Trolli Landscaping in business, because no bank would issue it credit, and Christopher's record prevents him from obtaining other employment. Louis stated that of the $89,000 loaned, only approximately $5,000 had been repaid. Louis further stated that he expects full repayment and that any unpaid amounts will be deemed an advancement to Christopher from Louis's estate. Louis also asserted that Lindsay has a moral obligation to repay her share of this debt.

{¶19} Christopher testified that Lindsay was responsible for the bulk of the parties' consumer debt, and that this debt and her bankruptcy filing have ruined his credit. He has settled approximately $14,000 of this debt, but still owes various creditors, including Louis. He believes that it is fair to hold Lindsay responsible for one-half of the total debt. Regarding the value of his assets, Christopher presented various estimates of the landscaping equipment, which were generally lower than the Kelly Blue Book values offered by Lindsay.

C. Christopher's Posttrial Motion to Reopen the Trial

{¶20} On August 15, 2014, or several months after the case was submitted to the court for a decision, Christopher filed a motion to "reopen the trial and receive newly discovered evidence of fraudulently concealed assets." Christopher averred that he had discovered that Lindsay and her Protem co-worker, Debbie Wanke ("Wanke"), are co-owners of "Delin Healthcare, L.L.C." He asked the court to reopen the matter to permit him to conduct further discovery in order to determine whether Lindsay had fraudulently concealed assets, and he prayed for an award of treble damages under R.C. 3105.171. The trial court denied this motion in its final judgment.

Trial Court Opinion

{¶21} On August 27, 2014, the trial court issued a 19-page judgment entry. In relevant part, the court determined that the marriage terminated on the last date of the trial, February 14, 2014. As to the division of property, the trial court determined that an IRA in the amount of $5,000 was Christopher's separate property. With regard to the marital home, the court concluded that of the $28,000 down payment, $20,650 was traceable to Christopher's premarital funds. The home was valued at $94,751, has "little, if any, equity," and is subject to unpaid mortgage charges and related fees, from the first mortgage with Green Tree, totaling $25,467, in addition to a second mortgage in the amount of $9,000. The court concluded that Christopher "perhaps is solely responsible for the deficiency of $25,467," and that "equity dictates that he be awarded the entire marital home." The court also ordered him to pay the costs and expenses of the home. Two PNC bank accounts, although listed in the name of Trolli Landscaping, one with a balance of $2,403 and one with $1,134, were determined to be marital assets and were divided equally by the court. A 2010 tax refund in the amount of $6,788 was also determined to be marital property and was divided equally. As to the couple's 2004 Jeep Cherokee, which Lindsay traded in for a 2010

Dodge Journey, the court concluded that Lindsay was not in contempt of the court's temporary restraining order for trading in this vehicle in light of the low trade-in value of $1,750 and the fact that Lindsay's parents borrowed the funds for the 2010 Dodge Journey.

{¶22} As to the marital debt, the trial court noted that the Discover card, Dick's Sporting Goods credit card, Home Depot, Tractor Supply, and HH Gregg credit cards were used solely by Christopher for both personal and business expenses, and the court ordered Christopher to be solely responsible for these debts. The court also noted that Christopher had negotiated settlements of the parties' debts to Chase, American Express, and American Express Centurion. The court ordered each party to report their respective 1099-C Cancellation of Debts forms on their respective tax returns and that they share equally in any tax consequences resulting from the cancellation of these debts.

{¶23} The court also ordered that neither party pay spousal support to the other party, and it declined to reserve continuing jurisdiction on this issue. Christopher's prior arrearages remained in effect, however, and were incorporated into the final decree. The court also ordered Christopher to pay child support in the amount of $595 per month if he also provided health insurance, or $554 per month, plus an additional medical support payment of $108 per month if health insurance is not provided. In this regard, the court concluded that Lindsay earns $38,040 per year, and Christopher has an income of $63,028 that includes Trolli Landscaping's payment of his various personal expenses, which are then written off as business expenses.

{¶24} With regard to Trolli Landscaping, the court observed that the parties failed to obtain expert valuations of the business and its good will value. The court observed that the business assets and cash were "freely used for both the parties household and the business interchangeably and with little accountability." The company's assets, including all of the vehicles, all of the

mowing equipment, snow plowing equipment, and other related miscellaneous items, as well as all of the business debt, were awarded to Christopher. Insofar as Christopher and his father asserted that the business owes the father $84,000 from his various loans, the court concluded that there was insufficient evidence to support Christopher's claims regarding these loans, as there was no contemporaneous documentation of a loan, no personal guaranty, and no repayment schedule. The court therefore concluded that all money provided by the father were gifts.

**{¶25}** Lindsay's motion to show cause in connection with Christopher's failure to make timely health insurance payments to Medical Mutual was denied, as the trial court concluded that the delays and nonpayments were because of Lindsay's actions in failing to provide Christopher with timely billing information.

<u>Issues Raised on Appeal</u>

**{¶26}** Christopher now appeals, assigning the following seven errors for our review:

Assignment of Error One

The trial court erred and/or abused its discretion when dividing marital property and failed to properly allocate the marital debt.

Assignment of Error Two

The trial court erred and/or abused its discretion by awarding Lindsay judgment in the sum of $7,623.86.

Assignment of Error Three

The trial court erred and/or abused its discretion by failing to find Lindsay in contempt of court for her violations of temporary restraining orders.

Assignment of Error Four

The trial court erred and/or abused its discretion or failed to properly determine the income of the parties as to child support and arrearages.

Assignment of Error Five

The trial court erred and/or abused its discretion by failing to find that Lindsay engaged in financial misconduct and by failing to make a distributive award to Chris due to Lindsay's improper conduct.

### Assignment of Error Six

The trial court erred and/or abused its discretion by failing to retain jurisdiction over the issue of spousal support and in failing to award Chris spousal support.

### Assignment of Error Seven

The trial court erred and/or abused its discretion by failing to grant Chris's motion to reopen trial and receive newly discovered evidence of fraudulently concealed assets.

### Division of Marital Assets and Debts

{¶27} Christopher's first and second assignments of error share a common basis in the record and the controlling case law because they both concern the trial court's division of marital assets and debts. We shall therefore address them together.

{¶28} In his first assignment of error, Christopher asserts that the trial court erred in connection with its division of the couple's marital assets and in failing to find Lindsay responsible for one-half of the marital debt, including the business debt. In his second assignment of error, Christopher argues that the trial court erred in awarding Lindsay one-half of the PNC bank accounts listed in the name of Trolli Landscaping and in awarding her one-half of the 2010 tax refund from the joint tax return.

{¶29} When reviewing a trial court's division of marital property, we consider whether the property division, as a whole, was an abuse of discretion. *Strauss v. Strauss*, 8th Dist. Cuyahoga No. 95377, 2011-Ohio-3831, ¶ 37. If there is some competent, credible evidence in the record to support the trial court's decision, there is no abuse of discretion. *Kapadia v. Kapadia,* 8th Dist. Cuyahoga No. 94456, 2011-Ohio-2255, ¶ 24.

{¶30} Pursuant to R.C. 3105.171(C)(1), a trial court must make an equal division of marital property, or "if an equal division is inequitable, the court must divide the marital property equitably." *Id.*, citing *Neville v. Neville*, 99 Ohio St.3d 275, 277, 2003-Ohio-3624, 791 N.E.2d 434. In undertaking this division, the trial court must consider the factors outlined in R.C. 3105.171(F). These factors include, among others: the duration of the marriage; the assets and liabilities of the spouses; the desirability of awarding the family home, or the right to reside in the family home for a reasonable period of time, to the spouse with custody of the children of the marriage; the liquidity of the property to be distributed; the economic desirability of retaining intact an asset or an interest in an asset; the tax consequences of the property division; and any retirement benefits of the spouses. R.C. 3105.171(F)(1)-(10).

{¶31} The trial court is not required to expressly comment on each factor, but it must indicate the basis for an award of spousal support in sufficient detail so as to enable a reviewing court to determine whether the award is "fair, equitable, and in accordance with the law." *Walpole v. Walpole*, 8th Dist. Cuyahoga No. 99231, 2013-Ohio-3529, ¶ 20.

{¶32} Similarly, we review the trial court's division of debt under an abuse of discretion standard. *Banjoko v. Banjoko*, 2d Dist. Montgomery No. 25406, 2013-Ohio-2566, ¶ 18. "Marital debt has been defined as any debt incurred during the marriage for the joint benefit of the parties or for a valid marital purpose." *Lucas v. Lucas*, 7th Dist. Noble No. 382, 2011-Ohio-6411, ¶ 33, quoting *Ketchum v. Ketchum*, 7th Dist. Columbiana No. 2001CO60, 2003-Ohio-2559, ¶ 47, and citing Turner, *Equitable Distrib. of Property*, Section 6.29, at 455 (2d Ed.1994, Supp.2002).

{¶33} Separate property includes "[a]ny real or personal property or interest in real or personal property that was acquired by one spouse prior to the date of the marriage." R.C. 3105.171(A)(6)(a)(ii). The party asserting that an asset is separate property has the burden of

proving that claim by a preponderance of the evidence. *Hall v. Hall*, 2d Dist. Greene No. 2013 CA 15, 2013-Ohio-3758, ¶ 14.

**{¶34}** Here, the trial court found:

[Christopher] certainly contributed to and perhaps is solely responsible for the deficiency of $25,467 [associated with the marital property.] * * * [Christopher also] testified that the business is indebted to his father in the amount of $84,000. None of these debts are memorialized, save for the security agreement for one 2005 * * * truck that was purchased after the parties separated. [Lindsay] testified that when she vacated the marital residence * * * she was removed from the Trolli Landscaping and Snowplow[ing], Inc. accounts [which the court determined to contain marital funds]."

**{¶35}** The trial court also concluded that the PNC bank accounts contained marital funds and that the 2010 tax refund was a marital asset. The trial court additionally found that Christopher had sole use of the Discover card, Dick's Sporting Goods credit card, Home Depot, Tractor Supply, and HH Gregg credit cards, and it ordered him solely responsible for these debts.

**{¶36}** Upon our review of the record, we conclude that all of the trial court's findings as to the marital assets and the marital debts are fully supported in the record. In addition, all of the findings and conclusions comport with the statutory requirements. Therefore, in accordance with the foregoing, we find no abuse of discretion in connection with the trial court's division of marital property, and we find no abuse of discretion in connection with the trial court's division of the marital debt.

**{¶37}** The first and second assignments of error are without merit.

<u>Contempt of Court</u>

**{¶38}** In the third assignment of error, Christopher argues that the trial court erred in failing to find Lindsay in contempt of the court's temporary restraining order in connection with her trade-in of the 2004 Jeep and for exaggerating Christopher's income in her motion for support pendente lite.

**{¶39}** We review a contempt finding under an abuse of discretion standard. *Kapadia*, 8th Dist. Cuyahoga No. 99797, 2012-Ohio-808, ¶ 26, citing *In re Contempt of Modic*, 8th Dist. Cuyahoga No. 96598, 2011-Ohio-5396, ¶ 7.

**{¶40}** Contempt may be defined, in general terms, as disobedience of a court order. *State ex rel. Corn v. Russo*, 90 Ohio St.3d 551, 554, 2001-Ohio-15, 740 N.E.2d 265. Civil contempt is characterized as a violation against the party for whose benefit the order was made and sanctions for civil contempt are designed to compel obedience with the court order, whereas sanctions for criminal contempt are punitive and designed to vindicate the court's authority. *Id*. at 555.

**{¶41}** In this matter, the trial court stated:

> The Court finds that while this matter was pending, [Lindsay] did utilize a 2004 Jeep Grand Cherokee as a trade in for a 2010 Dodge Journey motor vehicle. Although [Lindsay] did apparently transfer said Grand Cherokee in violation of this Court's previous Temporary Restraining Order, the Court declines to find her in contempt of court. [Lindsay] needs reliable transportation for herself and the parties' daughter. The Jeep Cherokee exceeded 100,000 miles when it was transferred and the trade in credit was only $1,750.00. Although [Lindsay] would have been better served by having obtained this Court's permission [before acting,] this Court declines to hold her in contempt as the level of her misconduct does not warrant punishment.

> The Court [further] finds that [Lindsay's] parents * * * were instrumental in purchasing the newer vehicle for [Lindsay]. Indeed, [they] appear to be the actual purchasers of this vehicle and evidence at trial established that the loan and presumably, the title to the 2010 Dodge vehicle are solely in [Lindsay's] parents' names.

**{¶42}** We find no abuse of discretion, in light of the evidence supporting all of the trial court's findings. In addition, the evidence demonstrated that Christopher consented to Lindsay's

conduct because she executed a quit claim deed of her interest in the marital residence to him, in exchange for her receipt of the title to the 2004 Jeep. As to Lindsay's overstatement of Christopher's income, Lindsay testified that she did not have access to current financial records, and that in addition to his income, the company also pays some personal expenses for Christopher. Therefore, we find no abuse of discretion in connection with the trial court's refusal to hold Lindsay in contempt of court.

{¶43} The third assignment of error is without merit.

Child Support and Arrearages

{¶44} In his fourth assignment of error, Christopher asserts that the trial court erred in failing to properly determine the income of the parties in setting the child support award.

{¶45} A trial court has broad discretion to calculate child support and, absent an abuse of discretion, an appellate court will not disturb a child support order. *Pauly v. Pauly,* 80 Ohio St.3d 386, 390, 1997-Ohio-105, 686 N.E.2d 1108. Similarly, the issue of whether income should be imputed to a parent for purposes of calculating child support pursuant to R.C. 3119.01 is also committed to the sound discretion of the trial court and will not be disturbed absent an abuse of discretion. Challenges to factual determinations upon which the child support order is based are reviewed using the "some competent credible evidence" standard. *Jajola v. Jajola*, 8th Dist. Cuyahoga No. 83141, 2004-Ohio-370, ¶ 8. Because a determination of gross income for support purposes is a factual finding, we must review the trial court's decision to determine whether it is supported by competent, credible evidence. *Id.*; *Fallang v. Fallang*, 109 Ohio App.3d 543, 672 N.E.2d 730, ¶ 12 (12th Dist.1996).

{¶46} In this matter, the trial court determined that Christopher's income is $63,028, including personal expenses that had been written off by Trolli Landscaping.

**{¶47}** The record demonstrates that in tax year 2010, Trolli Landscaping had gross receipts of $128,471, and he had income of $24,000, in addition to unemployment compensation of $13,460. In 2011, Trolli Landscaping had gross receipts of $132,167, and Christopher's income was $16,000. In 2012, he reported income of $24,000 in addition to $5,652 in unemployment compensation. In 2013, Christopher derived $20,418 in income from the business. Christopher's income did not show any increase despite not paying Lindsay income or a dividend in 2012 and 2013. Christopher also commingled his business expenditures and personal expenditures and received $500-$1,500 from his business account to reimburse various claimed business expenses, many of which lacked proper documentation. In addition, after Lindsay moved from the marital residence, she stopped receiving a paycheck and dividends from the company, yet Christopher's claimed net income did not increase. Furthermore, Christopher's claims regarding lack of funds are inconsistent with the purchases he made following the separation, including the purchase of a pickup truck and mower. We therefore conclude that the record contains competent and credible evidence to support the trial court's order. In light of all of the foregoing, we find no abuse of discretion.

**{¶48}** The fourth assignment of error is without merit.

Financial Misconduct

**{¶49}** In his fifth assignment of error, Christopher asserts that the trial court erred in failing to find that Lindsay engaged in financial misconduct and by failing to make a distributive award to Christopher due to Lindsay's improper conduct.

**{¶50}** R.C. 3105.171(E)(4) provides:

> If a spouse has engaged in financial misconduct, including, but not limited to, the dissipation, destruction, concealment, nondisclosure, or fraudulent disposition of assets, the court may compensate the offended spouse with a distributive award or with a greater award of marital property.

{¶51} A trial court has broad discretion to make a distributive award to a spouse, pursuant to R.C. 3105.171(E), in order to compensate for the financial misconduct of the other spouse. *Hvamb v. Mishne*, 11th Dist. Geauga No. 2002-G-2418, 2003-Ohio-921, ¶ 14, citing *Lassiter v. Lassiter*, 1st Dist. Hamilton No. C-010309, 2002-Ohio-3136.

{¶52} In this matter, the evidence of record establishes that while Lindsay had considerable debt, both parties lived beyond their means and also contributed to the total indebtedness. Moreover, for his part, Christopher continued to make purchases for his company despite claiming the need for substantial loans from Louis. In addition, by the time of trial, Lindsay's bankruptcy proceedings were concluded and some of their joint debts were settled. We therefore conclude that the trial court did not abuse its broad discretion in declining to give Christopher a distributive award to reflect Lindsay's debt.

{¶53} The fifth assignment of error is without merit.

### Spousal Support

{¶54} In his sixth assignment of error, Christopher asserts that the trial court erred in failing to retain jurisdiction over the issue of spousal support and in failing to award him spousal support.

{¶55} In general, we review spousal support issues under an abuse of discretion standard. *See Dunagan v. Dunagan*, 8th Dist. Cuyahoga No. 93678, 2010-Ohio-5232, ¶ 12.

{¶56} As to retaining jurisdiction for a future modification of spousal support, it has been held that a trial court has no authority to retain jurisdiction over the issue of spousal support where the court makes a specific finding that spousal support is not warranted. *Wolding v. Wolding*, 82 Ohio App.3d 235, 239, 611 N.E.2d 860 (3d Dist.1992).

{¶57} Herein, the trial court concluded, by application of the factors set forth in R.C. 3105.18, that spousal support was not warranted. The trial court was within its discretion in

rendering this decision. Although Lindsay's earnings were more than Christopher's reported earnings by the date of trial, Lindsay had only recently improved her earning ability, and Christopher, who had stopped paying the mortgage on the marital home, had greater access to cash from the business and also used business funds to pay some of his personal expenses. The trial court did not err in concluding that spousal support was not warranted, and the court did not abuse its discretion in refusing to retain jurisdiction for a future modification of spousal support.

{¶58} The sixth assignment of error is without merit.

### Motion to Reopen Trial

{¶59} In his seventh assignment of error, Christopher argues that the trial court erred in denying his motion to reopen the trial in order to obtain evidence of fraudulently concealed assets.

{¶60} A new trial may be granted in the sound discretion of the court for good cause shown, and the court's ruling will not be reversed absent an abuse of that discretion. *Heidnik v. Heidnik*, 11th Dist. Lake Nos. 2012-L-031 and 2012-L-049, 2013-Ohio-1289, ¶ 18; *Byrd v. Mickens-Byrd*, 10th Dist. Franklin No. 01AP-946, 2002-Ohio-2579, ¶ 20; *see also* Civ.R. 59.

{¶61} In this matter, Christopher filed a motion to "reopen the trial and receive newly discovered evidence of fraudulently concealed assets and * * * award defendant, pursuant to [R.C.] 3105.171(E)(5) treble damages based upon Lindsay's fraud upon the Court and upon defendant." In support of the motion, Christopher averred that he had discovered that Lindsay and Wanke are co-owners of "Delin Healthcare, LLC." He sought permission to reopen the matter in order to conduct discovery to determine whether Lindsay had fraudulently concealed assets. The trial court denied the motion as part of its final decree on August 27, 2014. We find no abuse of discretion as no evidence was submitted to demonstrate that Lindsay, in fact, fraudulently misrepresented marital assets to the trial court or that Delin actually owned any assets.

**{¶62}** The seventh assignment of error is without merit.

**{¶63}** Judgment is affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the domestic relations division of the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY EILEEN KILBANE, PRESIDING JUDGE

MELODY J. STEWART, J., and
ANITA LASTER MAYS, J., CONCUR